No. 22-40328

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————

CONSUMERS' RESEARCH; BY TWO, L.P.,

Plaintiffs-Appellees,

v.

CONSUMER PRODUCT SAFETY COMMISSION,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Eastern District of Texas

———————————

## BRIEF FOR APPELLANT

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

MARK B. STERN
JOSHUA M. SALZMAN
DANIEL AGUILAR
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff
  Civil Division, Room 7236
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC 20530
  (202) 514-3469*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as appellant is a government agency.  5th Cir. R. 28.2.1.

*s/ Amanda L. Mundell*
Amanda L. Mundell

## STATEMENT REGARDING ORAL ARGUMENT

The Consumer Product Safety Commission is a decades-old multi-member commission structured similarly to several other longstanding, multi-member commissions in the federal government. The district court entered partial final judgment, invoking Fed. R. Civ. P. 54(b) and declaring that the Commission is unconstitutionally structured because its members may be removed by the President only for cause. The Rule 54(b) certification was not proper because plaintiffs' claim for declaratory relief is not independent from other claims still pending before the district court, and because plaintiffs lack standing to seek declaratory relief untethered to any concrete injury. The district court's declaration that an Act of Congress is invalid should be reversed because it is directly at odds with *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and the Supreme Court's opinions implementing that decision. Because of the importance of the issues, the government believes that oral argument will facilitate the correct resolution of this appeal.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF THE ISSUES.................................................................... 2

STATEMENT OF THE CASE ....................................................................... 3

    A.    Statutory And Regulatory Background ...................................... 3

    B.    Factual And Procedural Background ......................................... 7

SUMMARY OF ARGUMENT .......................................................................13

STANDARD OF REVIEW ............................................................................16

ARGUMENT .................................................................................................16

I.    The District Court's Judgment Under Rule 54(b) Is Invalid
Because Plaintiffs' Complaint Does Not Present Multiple Claims......16

II.    Plaintiffs Lack Standing To Seek A Stand-Alone Declaratory
Judgment ...........................................................................................21

III.    The District Court's Constitutional Holding Is Foreclosed By
Supreme Court Precedent................................................................. 25

CONCLUSION ........................................................................................... 35

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton,*
  521 U.S. 203 (1997) .................................................................. 32

*Attala County, Miss. Branch of the NAACP v. Evans,*
  37 F.4th 1038 (5th Cir. 2022) ................................................... 24

*Automatic Liquid Packaging, Inc. v. Dominik,*
  852 F.2d 1036 (7th Cir. 1988) .................................................. 17

*Ballew v. Continental Airlines, Inc.,*
  668 F.3d 777 (5th Cir. 2012) .................................................... 32

*Big Time Vapes, Inc. v. FDA,*
  963 F.3d 436 (5th Cir. 2020) .................................................... 30

*Bosse v. Oklahoma,* 137 S. Ct. 1 (2016) ..................................... 30

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .................................................................. 25

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021) (en banc) ................................... 33
  *cert. granted* 142 S. Ct. 2707 (2022) ...................................... 33

*Collins v. Mnuchin,*
  938 F.3d 553 (5th Cir. 2019) (en banc) ................................... 29

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ..................................... 13, 20, 28, 29, 34

*Eldredge v. Martin Marietta Corp.,*
  207 F.3d 737 (5th Cir. 2000) .............................................. 18, 20

*Ernewayn v. Home Depot U.S.A., Inc.,*
  727 F.3d 369 (5th Cir. 2013) ...................................................... 1

*Ex parte Levitt,*
  302 U.S. 633 (1937) .................................................................. 25

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ........................................................ 15, 23, 24, 27, 33

*Freytag v. Commissioner*,
  501 U.S. 868 (1991) ..................................................................... 26

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ............................................. ii, 11, 15, 25, 26

*In re Aiken County*, 645 F.3d 428 (D.C. Cir. 2011) ......................... 26, 31-32

*Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*,
  860 F.2d 1441 (7th Cir. 1988) ............................................... 19, 21

*Jack Walters & Sons Corp. v. Morton Bldg., Inc.*,
  737 F.2d 698 (7th Cir. 1984) ..................................................... 18

*Liberty Mut. Ins. Co. v. Wetzel*,
  424 U.S. 737 (1976) .................................................................. 19

*Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*,
  483 F.3d 773 (11th Cir. 2007) .................................................... 21

*Local P-171, Amalgamated Meat Cutters & Butcher Workman of N. Am. v.*
  *Thompson Farms Co.*,
  642 F.2d 1065 (7th Cir. 1981) .................................................... 17

*Mistretta v. United States*,
  488 U.S. 361 (1989) .................................................................. 26

*Morrison v. Olson*,
  487 U.S. 654 (1988) ............................................................. 26, 27

*National Coalition for Men v. Selective Serv. Sys.*,
  969 F.3d 546 (5th Cir. 2020) ............................................. 16, 30, 31

*National Fed'n of the Blind of Tex., Inc. v. Abbott*,
  647 F.3d 202 (5th Cir. 2011) ...................................................... 16

*Page v. Preisser*,
  585 F.2d 336 (8th Cir. 1978) ...................................................... 20

*Perez v. Stephens*,
  745 F.3d 174 (5th Cir. 2014) ...................................................... 32

*Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*,
　594 F.2d 1313 (9th Cir. 1979) .................................................. 17

*Riser v. Baltimore & Ohio RR Co.*,
　224 F.2d 198 (2d Cir. 1955) ..................................................... 17

*Rodriguez de Ouijas v. Shearson/Am. Express, Inc.*,
　490 U.S. 477 (1989) ........................................................... 31, 32

*Rostker v. Goldberg*,
　453 U.S. 57 (1981) ................................................................. 30

*Samaad v. City of Dallas*,
　940 F.2d 925 (5th Cir. 1991) .................................................. 17

*Schexnaydre v. Travelers Ins. Co.*,
　527 F.2d 855 (5th Cir. 1976) (per curiam) .............................. 19

*Seila Law LLC v. CFPB*,
　140 S. Ct. 2183 (2020) ........................... 11, 12, 15, 23, 27, 28, 34

*State Oil Co. v. Kahn*,
　522 U.S. 3 (1997) ................................................................... 34

*Tetra Techs., Inc. v. Continental Ins. Co.*,
　755 F.3d 222 (5th Cir. 2014) .................................... 16, 17, 19, 21

*Tolson v. United States*,
　732 F.2d 998 (D.C. Cir. 1984) .......................................... 17, 20

*TransUnion LLC v. Ramirez*,
　141 S. Ct. 2190 (2021) ........................................................... 22

*Wiener v. United States*,
　357 U.S. 349 (1958) ............................................................... 27

*Zapata Gulf Marine Corp. v. Puerto Rico Mar. Shipping Auth.*,
　925 F.2d 812 (5th Cir. 1991) .................................................. 21

## U.S. Constitution and Statutes:

Article II of the U.S. Constitution ............................................. 12, 23

An Act to create a Federal Trade Commission,
   Pub. L. No. 63-203, 38 Stat. 717 (1914) ................................. 33

Consumer Product Safety Act,
   Pub. L. No. 92-573, 86 Stat. 1207 (1972) ................................ 3

FOIA Improvement Act of 2016,
   Pub. L. No. 114-185, 130 Stat. 538 (2016) ............................... 6

5 U.S.C. § 552(a)(1), (4) .......................................................... 5

5 U.S.C. § 552(a)(4)(A)(i) ........................................................ 6

5 U.S.C. § 552(a)(4)(B) ........................................................... 5

5 U.S.C. § 552(a)(6)(A) ........................................................... 5

15 U.S.C. § 41 .................................................................... 25

15 U.S.C. § 2051 ................................................................... 3

15 U.S.C. § 2051(a)(1), (5) ....................................................... 3

15 U.S.C. § 2053 ................................................................... 1

15 U.S.C. § 2053(a) ............................................................... 4

15 U.S.C. § 2053(a)-(b) ......................................... 3, 4, 9, 12, 13, 18, 1

15 U.S.C. § 2053(c) ............................................................... 4

15 U.S.C. § 2054 .................................................................. 4

15 U.S.C. § 2055a ................................................................. 4

15 U.S.C. § 2056 .................................................................. 4

15 U.S.C. § 2056(a) ............................................................... 4

15 U.S.C. § 2069 .................................................................. 4

15 U.S.C. § 2071 ................................................................... 4

15 U.S.C. § 2076(b)(7)(A) ...................................................... 5

28 U.S.C. § 1291 ................................................................... 1

28 U.S.C. § 1292(b) ............................................................ 18

28 U.S.C. § 1331 ................................................................... 1

**Rules and Regulations:**

5th Cir. R. 28.2.1 .................................................................. i

16 C.F.R. § 1015.7 ................................................................. 5

16 C.F.R. § 1015.9(g) ............................................................ 6

16 C.F.R. §§ 1015.4-1015.6 .................................................... 5

52 Fed. Reg. 10,012 (Mar. 27, 1987) ...................................... 6

52 Fed. Reg. 28,977 (Aug. 5, 1987) ...................................... 5, 6

85 Fed. Reg. 21,118 (Apr. 16, 2020) ...................................... 6

86 Fed. Reg. 68,244 (Dec. 1, 2021) ........................................ 4

86 Fed. Reg. 7499 (Jan. 29, 2021) .......................................... 7

Federal Rule of Civil Procedure 54 .......................................... 1

Federal Rule of Civil Procedure 54(b) .... ii, 1, 10, 12, 13, 14, 16, 17, 19, 20, 21

**Other:**

Antonin Scalia & Frank Goodman, *Procedural Aspects of the Consumer Product Safety Act*,
  20 UCLA L. Rev. 899 (1973) ................................................. 3

CPSC, Record of Commission Action (Dec. 15, 2020),
  https://perma.cc/A3XZ-23CQ ................................................................. 7

## STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court under 28 U.S.C. § 1331.  ROA.12.  The district court accepted plaintiffs' contention that the United States Consumer Product Safety Commission (CPSC or Commission) was unconstitutionally structured, but the court did not address their claims that the Commission therefore lacked authority to act on Freedom of Information Act (FOIA) requests or to promulgate rules governing fees under that statute.  The court issued its constitutional ruling as a declaratory judgment, which it certified as a partial final judgment under Federal Rule of Civil Procedure 54(b) on March 18, 2022.  ROA.651-52.  Defendant filed a timely notice of appeal on May 16, 2022.  ROA.658-60.

The entry of partial final judgment under Rule 54(b) was improper, *see infra* pp. 16-21, but this Court has jurisdiction to assess its own jurisdiction.  *Ernewayn v. Home Depot U.S.A., Inc.*, 727 F.3d 369, 370 (5th Cir. 2013).  To the extent that this Court concludes that the district court properly entered partial final judgment, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiffs filed Freedom of Information Act requests with the federal defendant Consumer Product Safety Commission.  The agency ultimately produced responsive documents and did not assess plaintiffs any fees.  In this suit, Plaintiffs urge that the Commission is unconstitutionally structured because its governing statute provides that the President may remove the Commissioners only for cause.  Plaintiffs argue that because of this alleged infirmity, the Commission lacks authority to promulgate a regulation regarding FOIA fees or deny any FOIA requests.  The district court accepted plaintiffs' contention that the Commission's removal restrictions are unconstitutional and issued a declaratory judgment to that effect.  It did not, however, determine whether plaintiffs were entitled to any other relief as a consequence of that legal determination.  Instead, the district court certified its constitutional ruling as a standalone declaratory judgment for immediate appeal under Federal Rule of Civil Procedure 54(b).

The issues presented are:

1.      Whether the district court erred in certifying its holding regarding the constitutionality of the removal restriction for CPSC

Commissioners for immediate appeal under Federal Rule of Civil Procedure 54(b).

2.    Whether plaintiffs lack standing to seek a declaratory judgment on the constitutionality of a federal agency independent of any action taken by that agency.

3.    Whether for-cause removal protections for the multi-member Consumer Product Safety Commission violate the separation of powers.

## STATEMENT OF THE CASE

### A.    Statutory And Regulatory Background

**1.**  The Consumer Product Safety Commission is an independent agency created by Congress in 1972 in response to concerns that "an unacceptable number of consumer products . . . present[ed] unreasonable risks of injury" to Americans and that "existing Federal authority to protect consumers from exposure to consumer products presenting unreasonable risks of injury [wa]s inadequate."  Consumer Product Safety Act, Pub. L. No. 92-573, § 2(a)(1), (5), 86 Stat. 1207, 1207 (1972) (codified at 15 U.S.C. § 2051 *et seq.*); 15 U.S.C. § 2051(a)(1), (5).

The Commission's structure parallels that of other multimember commissions.  *See* Antonin Scalia & Frank Goodman, *Procedural Aspects of the Consumer Product Safety Ac*t, 20 UCLA L. Rev. 899, 904 (1973).  The agency is headed by five Commissioners, nominated by the President and

confirmed by the Senate, who serve staggered seven-year terms. 15 U.S.C.
§ 2053(a)-(b). "Not more than three of the Commissioners shall be
affiliated with the same political party." *Id.* § 2053(c). In appointing
members, the "President shall consider individuals who, by reason of their
background and expertise in areas related to consumer products and
protection of the public from risks to safety, are qualified to serve as
members of the Commission." *Id.* § 2053(a). As relevant here, the
Commissioners may be removed by the President during their seven-year
terms for "neglect of duty or malfeasance in office but for no other cause."
*Id.* At all times relevant to this case, CPSC was headed by four
Commissioners who were nominated by the President and confirmed by the
Senate.

The Commission is charged with collecting and publishing data
relating to the cause and prevention of harm attributable to consumer
products, 15 U.S.C. §§ 2054, 2055a, 2056, and has authority to "promulgate
consumer product safety standards . . . necessary to prevent or reduce an
unreasonable risk of injury." *Id.* § 2056(a). Among other powers, the
agency may seek civil penalties for up to $120,000 per violation and up to
$17.15 million in aggregate for violations of the consumer safety laws, *id.*
§ 2069; 86 Fed. Reg. 68,244, 68,244 (Dec. 1, 2021), and it may file

injunctive actions in district court to restrain prohibited acts and violations of agency orders and regulations, 15 U.S.C. § 2071.  The Commission generally must initiate a proposed civil action through the Attorney General, although it may pursue a civil action on its own if the Attorney General declines representation.  *Id.* § 2076(b)(7)(A).

Like other federal agencies, the Commission is subject to the requirements of the Freedom of Information Act.  FOIA requests submitted to the Commission are initially reviewed by FOIA specialists, who conduct searches and make determinations on the withholding of information under FOIA's exemptions.  16 C.F.R. §§ 1015.4-1015.6.  Administrative appeals from those determinations are reviewed by the Commission's General Counsel.  *Id.* § 1015.7.  After exhausting administrative remedies, requesters may challenge the agency's denial of records in district court.  5 U.S.C. § 552(a)(4)(B); *id.* § 552(a)(6)(A), (a)(6)(C)(i).

**2.**  In 1987, pursuant to FOIA's requirements, the Commission established procedures to govern the agency's responses to FOIA requests, including the "fees applicable to the processing of requests" and "when such fees should be waived or reduced."  *See* 5 U.S.C. § 552(a)(1), (4) (requiring agencies to establish such procedures and fees); 52 Fed. Reg. 28,977 (Aug. 5, 1987).  The Commission adopted a fee schedule that set a $0.10 per-page

duplication fee for paper documents, 52 Fed. Reg. at 28,979, and also adopted regulations governing the factors the agency uses to make determinations on requests for fee waivers, *see id.* at 28,979-80; 16 C.F.R. § 1015.9(g).

In 2020, the Commission issued a Notice of Proposed Rulemaking (NPRM), proposing to update its FOIA fee regulation to ensure compliance with the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, and the Office of Management and Budget's *Uniform Freedom of Information Act Fee Schedule and Guidelines*, 52 Fed. Reg. 10,012 (Mar. 27, 1987), which require agencies to "charge fees that recoup the full allowable direct costs they incur" in responding to FOIA requests, *id.* at 10,018. *See* 85 Fed. Reg. 21,118, 21,118 (Apr. 16, 2020); *see also* 5 U.S.C. § 552(a)(4)(A)(i) (agency fee schedules must "conform to the guidelines" set by Office of Management and Budget "which shall provide for a uniform schedule of fees for all agencies"). As relevant here, the Commission proposed increasing the per-page duplication fee for paper copies from $0.10 to $0.15 and eliminating duplication fees for electronic copies altogether. 85 Fed. Reg. at 21,119. The Commission did not propose any amendment to the factors it uses to make determinations on fee waiver requests. *See id.* at 21,120. Only two comments were submitted on the

6

proposed rule, and neither objected to the proposed fee nor discussed the agency's fee waiver considerations.  Plaintiffs did not comment on the proposed rule.

The Commission eventually published a final rule that adopted the proposed changes.  86 Fed. Reg. 7499, 7500 (Jan. 29, 2021) (the FOIA Fee Rule).  The final rule was authorized by a unanimous vote of the Commissioners and took effect March 1, 2021.  *See* CPSC, Record of Commission Action (Dec. 15, 2020), https://perma.cc/A3XZ-23CQ; 86 Fed. Reg. at 7,499.

### B.    Factual And Procedural Background

**1.**  Plaintiffs Consumers' Research and By Two, LP (By Two) state that they are educational organizations focused on product safety issues that conduct research and publish reports on consumer products, and that they frequently file FOIA requests with the Commission.  ROA.13-14.

Just after the final rule took effect, plaintiffs submitted FOIA requests to CPSC, seeking documents related to voluntary safety standards for certain products developed and published by ASTM International (ASTM), an international standards organization.  ROA.23-24, 26-27.  Plaintiff By Two also submitted FOIA requests seeking records related to certain brands of drop-side cribs, and it requested production in paper format.

ROA.25-27.  Plaintiffs requested public interest fee waivers in connection
with their requests.  ROA.23-27.

The Commission's FOIA office initially responded by advising that it
would not produce any records containing the ASTM standards because of
copyright concerns, but that plaintiffs could obtain the standards by
purchasing them from ASTM or potentially by viewing them on ASTM's
online Reading Room.  ROA.24, 27.  The office declined to make a
determination on plaintiffs' fee waiver requests in connection with the
ASTM requests because it did not charge any fees for the records requests.
ROA.24, 27, 124.  With respect to By Two's FOIA request relating to drop-
side cribs, the office advised that it needed more time to provide a
determination regarding potentially responsive records.  ROA.616; *see*
ROA.434-38.  The office also asked By Two for additional information
regarding its request for a fee waiver; when By Two declined to provide
additional information, the office denied the fee waiver but also declined to
assess any fees.  ROA.434-38.

Plaintiffs submitted administrative appeals in connection with their
FOIA requests.  Their appeals identified no substantive error in the
agency's responses to their requests and instead asserted that the "actions
taken by the Commission in connection with" their FOIA requests were

unlawful because the removal restriction for the Commissioners violated the Constitution's separation of powers.  ROA.24-25, 27, 422.  The agency's Acting General Counsel concluded that the constitutional challenges were not meritorious but remanded the ASTM requests to the chief FOIA officer to conduct a search for any responsive records and to determine whether any such records could be released.  *See* ROA.28-30, 425-32, 616-17.

**2.**  Three days later, plaintiffs sued the Commission in district court, asserting three interrelated counts.  ROA.11.  In Count I, plaintiffs sought a declaratory judgment that the removal restriction for CPSC Commissioners in 15 U.S.C. § 2053(a) violates Article II of the Constitution.  ROA.35-37, 41.  Count II alleged that the agency's FOIA Fee Rule should be set aside under the Administrative Procedure Act (APA) as contrary to law based on the same theory that the Commissioners who approved the rule enjoy unconstitutional removal protections.  ROA.38-39.  Count III alleged that the FOIA Fee Rule and the agency's initial denials of plaintiffs' FOIA requests should be set aside under FOIA, again based on the same constitutional theory.  ROA.39-41.

Plaintiffs moved for partial summary judgment as to Count I.  They urged that by addressing the constitutional challenge in isolation, the court would resolve an issue raised by the other two counts as well.  ROA.106

("[A]ll of [the] claims [in Counts II and III] depend on the success of the same removal argument that Plaintiffs assert in Count I."); ROA.109 (stating that a "ruling [on Count I] would effectively end the case"). They also requested that the district court enter a final judgment under Federal Rule of Civil Procedure 54(b) to "tee up the constitutional removal question for immediate appeal." ROA.106. The government opposed partial summary judgment and moved to dismiss the complaint. ROA.327-70.

While the motions were pending before the district court, the Commission completed its review of plaintiffs' FOIA requests relating to ASTM standards. The agency informed By Two that it "located responsive records" and obtained permission from "the copyright holder of these records" to provide By Two "with physical copies," ROA.587. The Commission also provided By Two with all responsive, non-exempt records relating to its drop-side crib requests. ROA.655-57. The agency also informed Consumers' Research that its search in response to Consumers' Research separate FOIA request "did not reveal any responsive records." ROA.584. The agency declined to assess fees in connection with any of plaintiffs' requests. ROA.434-38, 580-88.

**3.** The district court granted plaintiffs' motion for partial summary judgment and denied the government's motion to dismiss the complaint. ROA.613.

The court first ruled that plaintiffs had standing because they "allege informational injuries resulting from the Commission's withholding of documents to which Plaintiffs claim entitlement under FOIA," "ongoing" financial injury due to "increased fees under the Final Rule," and "ongoing constitutional injury by . . . regulations promulgated by an unconstitutionally structured agency." ROA.620-23.

Turning to the merits of the constitutional issue, the court noted that the commissioners are principal officers with "significant policymaking and administrative authority." ROA.629. The court recognized that *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), upheld a restriction on the President's removal power for members of the FTC, a similarly constituted multimember agency. ROA.629-30. The court concluded, however, that "*Humphrey's Executor* does not apply . . . because the [CPSC] exercises substantial executive power, unlike the [FTC]." ROA.629. The court compared the CPSC's authority to that of the Consumer Financial Protection Bureau's (CFPB), the agency at issue in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). ROA.632-33. There, the

Supreme Court declared the for-cause removal restrictions afforded the single Director of the CFPB unconstitutional, holding that *Humphrey's Executor* is inapplicable to agencies headed by a single officer. *Seila Law*, 140 S. Ct. at 2211. The district court here recognized that CPSC is a multi-member commission, but it found it significant that the CPSC, like the CFPB, can "promulgate consumer product safety standards" and rules that "ban[] products nationwide," and that it can "unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications." ROA.634-35 (quotation marks omitted). The court also stated that CPSC "holds the quintessentially executive power not considered in *Humphrey's Executor* to file suit in federal court," that it can seek monetary penalties "as a means of enforcement," and that it can "issue subpoenas." ROA.635 (quotation marks omitted). The court concluded that *Humphrey's Executor* is inapplicable where the officers of a multi-headed agency exercise this type of executive authority, and it thus held "that the restriction on presidential removal established by 15 U.S.C. § 2053(a) violates Article II of the U.S. Constitution." ROA.638-39.

The court stated that it was appropriate to issue a declaratory judgment with regard to the constitutional issue before considering the impact of that ruling on plaintiffs' FOIA and APA claims, and to certify that

ruling as a partial final judgment under Rule 54(b). ROA.646, 649. For

support, the court invoked *Collins v. Yellen*, 141 S. Ct. 1761 (2021), in which

the Supreme Court held that removal restrictions on the Director of the

Federal Housing Finance Agency were impermissible but also stated that its

ruling might have no bearing on the relief sought by the plaintiffs in that

case. *See* ROA.645-49.

The court stated that "[t]he parties do not dispute that Count I is an

independent claim and that declaring the removal restriction

unconstitutional is an 'ultimate disposition' of that claim." ROA.647. And

because "all three Counts assert that the removal restriction in 15 U.S.C.

§ 2053(a) is unconstitutional," the court found "no just reason for delay,"

and entered partial final judgment. ROA.647-49.

## SUMMARY OF ARGUMENT

This appeal arises from FOIA requests submitted by plaintiffs to the

Commission. The Commission produced records responsive to the

plaintiffs' FOIA requests, ROA.580-88, 617, 655-57, and did not assess

plaintiffs any fees for that production.

Plaintiffs' suit argues that the Commission could not properly

promulgate regulations governing increased FOIA processing costs and fee

waivers and could not properly deny FOIA requests. The basis for this

assertion is their claim that the removal restrictions for Commission members violate the separation of powers.  The district court did not address what relief, if any, should be awarded with respect to the challenged fee waiver regulation and the Commission's authority to deny FOIA requests.  Instead, it ruled on plaintiffs' constitutional contention in isolation and certified that ruling as a declaratory judgment for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b).

**I.**  The district court erred in issuing a partial final judgment under Rule 54(b).  Plaintiffs' constitutional claim is not independent from the other two counts of their complaint.  On the contrary, their constitutional argument is integral to their claims that the Commission could not properly issue fee waiver regulations or act on FOIA requests.  Rule 54(b) does not authorize entry of partial final judgment under these circumstances.  Accordingly, the district court should have resolved all of the issues in the case before entering judgment on plaintiffs' claim for declaratory relief and certifying it as a partial judgment under Rule 54(b).

**II.**    The court's ruling is particularly anomalous because plaintiffs lack standing to pursue their constitutional claim uncoupled from any showing of injury.  Their constitutional argument is the predicate for relief

on their FOIA-related claims.  It is not an independent basis on which to establish Article III injury.

**III.**    If this Court were to reach the merits of the district court's holding, it should recognize that the district court overstepped its authority in declaring that the statutory removal protections are unconstitutional in contravention of longstanding Supreme Court precedent.  For nearly a century, the Supreme Court has held that for-cause removal restrictions are constitutional for multi-member agencies like the Commission.  *See Humphrey's Executor v. United States*, 295 U.S. 602 (1935).  The Supreme Court has reiterated that understanding of *Humphrey's Executor*, explaining that a separation-of-powers violation caused by multiple layers of removal restrictions may be remedied by leaving in place for-cause removal restrictions for a multi-member Commission, *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010), or by restructuring a single-member Executive agency with removal restrictions into a multi-member Executive agency with removal restrictions, *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2211 (2020).  The Supreme Court has the authority to reconsider its constitutional decisions but—as this Court has emphasized—no other court has "license to disregard

or overrule that precedent." *National Coalition for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549-50 (5th Cir. 2020).

## STANDARD OF REVIEW

This Court reviews the propriety of a Rule 54(b) certification de novo. *Tetra Techs., Inc. v. Continental Ins. Co.*, 755 F.3d 222, 228 (5th Cir. 2014). The Court also reviews plaintiffs' standing and constitutional claims de novo. *National Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011).

## ARGUMENT

### I. The District Court's Judgment Under Rule 54(b) Is Invalid Because Plaintiffs' Complaint Does Not Present Multiple Claims

**A.** Under Federal Rule of Civil Procedure 54(b), a court can certify a ruling that disposes of "fewer than all" of a plaintiff's claims only if the complaint truly "presents more than one claim for relief." In determining whether a complaint raises multiple claims for purposes of Rule 54(b), courts look to a variety of factors, including the degree of factual overlap between the asserted claims, whether there are separate recoveries available for each claim, and whether the rule against claim-splitting would

bar the claims from being brought separately.[1]  This Court applies these "rules of thumb" in deciding whether a claim has properly been certified under Rule 54(b).  *Samaad v. City of Dallas*, 940 F.2d 925, 932 (5th Cir. 1991), *abrogated on other grounds by Stop the Beach Renourishment, Inc. v. Florida Dep't of Envt. Prot.*, 560 U.S. 702, 728 (2010).  And the Court has explained that certification is improper where a district court "does not resolve" a claim but merely "rul[es] on a threshold legal issue relevant to that claim."  *Tetra Techs., Inc. v. Continental Ins. Co.*, 755 F.3d 222, 230 (5th Cir. 2014).

**B.**  Under these principles, the district court could not enter partial final judgment under Rule 54(b).  Plaintiffs' constitutional claim is in no sense independent from their claims regarding the Commission's authority to issue fee waiver rules or to act on FOIA requests.  Because the claims "are not separate," any "appeal must be deferred till" all claims "are

---

[1] *See, e.g.*, *Automatic Liquid Packaging, Inc. v. Dominik*, 852 F.2d 1036, 1037 (7th Cir. 1988) (considering whether there is "significant factual overlap" (quotation marks omitted)); *Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 594 F.2d 1313, 1316 (9th Cir. 1979) (similar); *Local P-171, Amalgamated Meat Cutters & Butcher Workman of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1070 (7th Cir. 1981) ("At a minimum, claims cannot be separate unless separate recovery is possible . . . ."); *Riser v. Baltimore & Ohio RR Co.*, 224 F.2d 198, 199 (2d Cir. 1955) (similar); *Tolson v. United States*, 732 F.2d 998, 1001 (D.C. Cir. 1984) (applying the rule against claim-splitting).

resolved." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 741 (5th Cir. 2000) (quoting *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 702 (7th Cir. 1984)).

The complaint asserts three counts: (1) that the "Commission's structure violates" the "separation of powers"; (2) that the "Commission's FOIA Rule" violates the APA "because it was promulgated by an unconstitutionally structured agency"; and (3) that the Commission violated FOIA by "enforcing an unconstitutional FOIA Rule and unlawfully withholding records without political accountability." ROA.35, 38-39. As the district court emphasized, plaintiffs' separation of powers contentions are the basis for their challenges to specific aspects of the Commission's authority. *See* ROA.648 ("[A]ll three Counts assert that the removal restriction in 15 U.S.C. § 2053(a) is unconstitutional.").

Plaintiffs themselves have urged that "all of [the] claims [in Counts II and III] depend on the success of the same removal argument that plaintiffs assert in Count I" and a "ruling [on Count I] would effectively end the case." ROA.106, 109. This point might be relevant to determining whether the district court's order presented "a controlling question of law," which might be the subject of an interlocutory appeal under 28 U.S.C. § 1292(b), if both the district court and this Court agreed that certification were appropriate.

But it is not the standard for certification of a partial final judgment under Rule 54(b). *See Tetra Techs.*, 755 F.3d at 227 (distinguishing between the considerations relevant to the provisions). For purposes of Rule 54(b), all three counts in the complaint are merely "different legal characterizations of the same facts" which "constitute only one claim for relief," *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 860 F.2d 1441, 1446 (7th Cir. 1988), and are not suitable for certification under Rule 54(b). Thus, Rule 54(b) does not apply when a plaintiff "merely presents alternative theories[] . . . by which the same set of facts might give rise to a single liability." *Schexnaydre v. Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir. 1976) (per curiam).

Plaintiffs' request for various forms of equitable relief, ROA.647, does not alter this analysis. The Supreme Court has made clear that "a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief" under Rule 54. *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976). Thus, Rule 54(b) certification is improper when a district court issues "a declaratory judgment on the issue of liability" but leaves unresolved plaintiffs' other requests for relief based on "a single legal theory . . . applied to only one set of facts." *Id.* at 742-43. A contrary rule "would condone a

practice whereby a district court in virtually any case before it might render an interlocutory decision on the question of liability," contrary to the orderly rules of procedure. *Id.* at 745.[2]

Indeed, such a rule would implicate some of the same concerns that preclude claim-splitting. *See Eldredge*, 207 F.3d at 741. Rule 54(b) "did not[] . . . purport to amend or dilute the fundamental rule against splitting a cause of action and deciding appellate cases piecemeal." *Page v. Preisser*, 585 F.2d 336, 339 (8th Cir. 1978). Plaintiffs "could not have maintained successive suits against the [Commission] on the three claims the district court viewed as 'separate,'" *Tolson v. United States*, 732 F.2d 998, 1002 (D.C. Cir. 1984), because a ruling on one count would necessarily have decided the only issue presented in the other counts. And if plaintiffs' claims could not be split between successive suits, they similarly cannot be split between successive appeals.

---

[2] Although the district court believed that plaintiffs' requests for relief under the APA and FOIA "require[d] addressing additional complex and novel questions about the appropriate relief," ROA.648, that is true even for plaintiffs who would seek prospective and retrospective relief for a single separation-of-powers claim. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021), *and on remand*, 27 F.4th 1068, 1068-69 (5th Cir. 2022) (en banc). And, more generally, it will often be true that when multiple remedies are sought based on a single cause of action, some remedies (such as damages) require fact-finding that is unnecessary to determining the propriety of other remedies.

Because the declaratory judgment count and the remaining counts left unaddressed by the district court constitute one claim for relief, the district court should have resolved them all instead of issuing a Rule 54(b) judgment as to the "threshold legal issue," which is not a proper basis for certifying an appeal. *Tetra Technologies*, 755 F.3d at 230; *Indiana Harbor Belt R.R. Co.*, 860 F.2d at 1444; *see also Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 780 (11th Cir. 2007) (adjudication of one count "does not represent a 'final judgment'" where "both counts are functionally part of the same claim under Rule 54(b)"). This Court should accordingly vacate the district court's order entering partial final judgment pursuant to Rule 54(b).[3]

## II. Plaintiffs Lack Standing To Seek A Stand-Alone Declaratory Judgment

The district court's ruling is particularly anomalous because plaintiffs plainly would lack standing to pursue their constitutional assertion as a stand-alone claim. The district court did not consider the question of

---

[3] Although issuing a partial final judgment here was improper under Rule 54(b), and the declaratory judgment does not by its terms preclude the Commission from performing its functions, the Commission appeals that judgment and seeks this Court's review and vacatur now, as a failure to seek immediate appellate review could potentially result in the district court's order taking preclusive effect. *See Zapata Gulf Marine Corp. v. Puerto Rico Mar. Shipping Auth.*, 925 F.2d 812, 814-15 (5th Cir. 1991).

standing to pursue a declaratory judgment claim in isolation and discussed
that issue only in reviewing the complaint as a whole.  ROA.620-25.  The
court concluded that plaintiffs established standing through their
allegations that they suffered or will suffer three forms of injury: (1)
informational injury from the withholding of documents to which plaintiffs
claim entitlement, ROA.620; (2) financial injury from the increased fees
imposed by the 2021 rule, ROA.621; and (3) "constitutional injury from the
threat of being subject to a regulatory scheme and governmental action
lacking Article II oversight," ROA.624.

For purposes of the partial final judgment analysis, it is axiomatic
that "standing is not dispensed in gross; rather, plaintiffs must demonstrate
standing for each claim that they press and for each form of relief that they
seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).
Accordingly, to maintain a freestanding declaratory judgment claim,
plaintiffs would be required to show that they will imminently suffer a
cognizable injury resulting from the Commission's structure.  That
showing, under the district court's framework, would need to be
independent from past application of the Final Rule and past FOIA
determinations, subjects that the district court expressly treated as separate
from the declaratory judgment count.  ROA.647 (describing how "Count I

seeks declaratory relief under Article II of the Constitution, whereas Counts II and III seek to set aside the Final Rule and the FOIA determinations").

Plaintiffs cannot demonstrate that they have standing to seek declaratory relief untethered from any other claim. The Supreme Court has explained that "[i]n the specific context of the President's removal power" a plaintiff can establish standing by showing that it has sustained injury "from an executive act that allegedly exceeds the official's authority." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020); *see id.* at 2194 (considering separation-of-powers claim as a defense to agency enforcement action). But plaintiffs' claim for declaratory relief is purely "prospective," ROA.646, and not directed to remedying any Commission action that caused them injury.

The district court granted declaratory relief on the erroneous basis that, because plaintiffs assert that they are frequent FOIA requesters, a declaratory judgment would provide "prospective relief from the Commission's ongoing processing of their FOIA requests without proper presidential oversight" and would ensure that Commission orders "will be enforced only by a constitutional agency accountable to the Executive." ROA.646 (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 513 (2010)).

23

Contrary to the district court's supposition, such allegations bear no resemblance to the concerns present in *Free Enterprise*.  The plaintiffs in that case were accounting firms that operated in a highly regulated area of financial services overseen by the Public Company Accounting Oversight Board.  The Board had "expansive powers to govern" the accounting firms, and failure to follow Board rules could constitute a "federal crime punishable by up to 20 years' imprisonment or $25 million in fines."  561 U.S. at 485.  Here, by contrast, the plaintiffs are not regulated by the Commission or subject to any enforcement regime.  Rather, plaintiffs have submitted FOIA requests to the Commission and assert that they may at some point be subject to the current FOIA fee schedule if the Commission should impose fees in connection with future requests.  With regard to action on future FOIA requests, it is conjectural whether plaintiffs will be injured by what they regard as an improper application of costs and fees related to processing such requests, and there is no reason to believe that plaintiffs' future FOIA requests will be passed on by the Commissioners themselves (*i.e.*, the officers who are alleged to have unconstitutional removal protections), rather than lower-ranking staff whose constitutional status is not questioned.  *See Attala County, Miss. Branch of the NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (recognizing that "federal courts

are skeptical of 'standing theories that require guesswork as to how independent decisionmakers will exercise their judgment'" (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013))).

In sum, plaintiffs do not have standing to pursue a stand-alone claim for declaratory relief regarding their constitutional contentions abstracted from any claims of injury. *See Ex parte Levitt*, 302 U.S. 633, 634 (1937) (dismissing constitutional challenge to the appointment of a Supreme Court Justice because plaintiff failed to demonstrate "that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action").

## III.   The District Court's Constitutional Holding Is Foreclosed By Supreme Court Precedent

**A.**  Congress has accorded for-cause tenure protections to officers of numerous multi-member federal agencies since it created the Interstate Commerce Commission in 1887. *See* Act of Feb. 4, 1887, ch. 104, § 11, 24 Stat. 379, 383.  Half a century later, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court upheld the constitutionality of such restrictions in a case involving a commissioner of the multi-member Federal Trade Commission, who could be removed only for "inefficiency, neglect of duty, or malfeasance in office."  *Id.* at 619-20 (quoting 15 U.S.C. § 41).  The Court "found it 'plain' that the Constitution did not give the

President 'illimitable power of removal' over the officers of independent agencies," and held that the "'coercive influence' of the removal power would 'threate[n] the independence of [the] commission.'" *Morrison v. Olson*, 487 U.S. 654, 687-88 (1988) (alternations in original) (quoting *Humphrey's Executor*, 295 U.S. at 630).

"Since [the Court's] 1935 decision in *Humphrey's Executor* . . . , removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the Federal Trade Commission, the Interstate Commerce Commission, and the Consumer Product Safety Commission." *Morrison*, 487 U.S. at 724-25 (Scalia, J., dissenting) (citations omitted).  Other such agencies include the Securities and Exchange Commission, the Federal Communications Commission, *see Freytag v. Commissioner*, 501 U.S. 868, 916, 920 (1991) (Scalia, J., concurring), the Nuclear Regulatory Commission, National Labor Relations Board, *In re Aiken County*, 645 F.3d 428, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring), and the U.S. Sentencing Commission, *Mistretta v. United States*, 488 U.S. 361, 410-11 (1989).  Substantive removal restrictions have also been understood to be constitutional under *Humphrey's Executor* for multi-member Executive tribunals such as the Tax Court, *Freytag*, 501 U.S. at 920 (Scalia, J., concurring), the Court of Appeals for the Armed Forces,

*Morrison*, 487 U.S. at 725 (Scalia, J., dissenting), and the War Claims

Commission, *Wiener v. United States*, 357 U.S. 349 (1958).

The Supreme Court's more recent separation of powers rulings have

similarly recognized that Congress has significant latitude in establishing

multi-member agencies whose members have some restrictions on their

removal.  In *Free Enterprise*, the Court invalidated "novel" and "rigorous"

removal restrictions for certain inferior officers who could only be removed

by the SEC Commissioners.  561 U.S. at 496.  The Court reached that

holding on the explicit understanding that the SEC Commissioners cannot

"be removed by the President except under the *Humphrey's Executor*

standard," *id.* at 487, and that understanding was essential to the Court's

analysis that the inferior officers had "two levels of protection from

removal," *id.* at 514.  To cure the constitutional violation identified in *Free*

*Enterprise*, the Court severed the inferior officer's removal restrictions.  *Id.*

at 508-10.  That severance cured the constitutional infirmity because the

SEC was now "fully responsible" for the actions of the inferior officers, who

are "no less subject than the Commission's own functions to Presidential

oversight," and thus constitutional.  *Id.* at 509.

In *Seila Law*, 140 S. Ct. 2183, the Supreme Court likewise recognized

that *Humphrey's Executor* permits removal restrictions for multi-member

regulatory agencies.  The Court agreed with the United States that because the Consumer Financial Protection Bureau was "led by a single Director" rather than "a board with multiple members," the President must have the ability to remove the Director at will.  *Id.* at 2191.  The Court explained that in contrast to "a traditional independent agency," such as "the multimember Consumer Product Safety Commission," *id.* at 2192, agencies headed by a "single Director . . . cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle." *Id.* at 2200.  The Court thus severed the Director's removal restrictions as unconstitutional.  *Id.* at 2210-11.  In doing so, the Court explained that Congress may "pursu[e] alternative responses to the problem—for example, converting the CFPB into a multimember agency." *Id.* at 2211.  Under the district court's reasoning in this case, however, that "alternative response[]" would be unconstitutional—a conclusion directly at odds with the Supreme Court's invitation to Congress.

The Supreme Court applied *Seila Law* in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), where the Court invalidated removal restrictions for the single Director who led the Federal Housing Finance Agency (FHFA).  The Court rejected the suggestion that the removal restrictions in that case might be

permissible because the FHFA wielded different powers than the CFPB. It stressed that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." *Id.* at 1785. By the same token, the Court held inapt a historical analogy to removal restrictions for members of an earlier agency with arguably comparable powers because that earlier agency was "led by a multi-member Commission" rather than a single Director. *Id.* at 1785 n.19.

Thus, as this Court has explained, the holding of *Humphrey's Executor* continues to apply to statutory removal restrictions for "multi-member bodies of experts." *Collins v. Mnuchin*, 938 F.3d 553, 587 (5th Cir. 2019) (en banc), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 141 S. Ct. 1761 (2021).

**B.** The district court concluded that it could limit the holding of *Humphrey's Executor* based on its own understanding of the Supreme Court's rationale in *Seila Law* and its application to the workings of the Consumer Product Safety Commission.

That was error. The Supreme Court's "decisions remain binding precedent until [the Court] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing

29

vitality." *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (quotation marks omitted) (summary reversal of a decision that failed to apply binding precedent). It is therefore irrelevant whether a district court believes that Supreme Court precedent "was correctly decided" or that later decisions "swept away [earlier] analytical foundations." *Id.* at 3 (Thomas, J., concurring). This Court has accordingly admonished that while the Supreme Court "might well decide . . . to reexamine" its precedents, this Court is "not supposed to . . . read tea leaves to predict where it might end up." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 447 (5th Cir. 2020) (second alteration in original and quotation marks omitted) (declining to depart from the Supreme Court's established nondelegation precedents).

Adhering to that precept, this Court declined to consider whether significantly changed circumstances had called into question the Supreme Court's decision sustaining the constitutionality of the male-only draft. *See National Coalition for Men v. Selective Serv. Sys.*, 969 F.3d 546 (5th Cir. 2020), *cert. denied* 141 S. Ct. 1815 (2021). This Court recognized that in *Rostker v. Goldberg*, 453 U.S. 57 (1981), the Supreme Court held that male-only registration for the military draft did not violate the Due Process Clause and "based its reasoning on the fact that women were then barred from serving in combat." *National Coalition for Men*, 969 F.3d at 548. In

*National Coalition for Men,* the district court surveyed the significant changes occurring in the intervening years, including the opening of all combat roles to women. *Id.* The district court concluded that, in light of these fundamental changes, the Supreme Court's decision "no longer controlled" and thus the male-only registration requirement was unconstitutional. *Id.* This Court reversed, explaining that "[t]he Fifth Circuit is a strict stare decisis court and cannot ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Id.* at 549 (quotation marks omitted). "[E]ven where subsequent decisions or factual developments may appear to have significantly undermined the rationale for the earlier holding," those circumstances "do[] not grant a court of appeals license to disregard or overrule that precedent." *Id.* at 549-50 (cleaned up) (quoting *Rodriguez de Ouijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

That respect for stare decisis dictates the same result here. As then-Judge Kavanaugh recognized, "*Humphrey's Executor* is an entrenched Supreme Court precedent, protected by stare decisis," which applies to traditional multi-member regulatory agencies. *In re Aiken County*, 645 F.3d at 446 (Kavanaugh, J., concurring) (discussing the Nuclear Regulatory Commission). Even in cases where there has been "a bona fide, significant

change in subsequent law," district courts must apply the Supreme Court's binding decisions. *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *see id.* at 238 ("[A] judge's stated belief that a case should be overruled does not make it so."). Thus, even if an opinion's reasoning has been "rejected in some other line of decisions," this Court "must follow the Supreme Court's directly controlling precedent." *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 782 (5th Cir. 2012) (collecting cases) (quoting *Rodriguez de Ouijas*, 490 U.S. at 484). In so doing, the Court "respect[s] the Supreme Court's singular role in deciding the continuing viability of its own precedents," *Perez v. Stephens*, 745 F.3d 174, 180 (5th Cir. 2014), particularly on constitutional questions where fractured application of Supreme Court precedents would quickly have deleterious effects.

Those cautions apply with particular force here. The district court held that *Humphrey's Executor* does not apply to multimember agencies that exercise "substantial executive power," ROA.629, and concluded that the CPSC exercises such power because it can issue regulations and bring enforcement actions. ROA.629-39. On its face, the district court's reasoning would call into question longstanding removal provisions for multi-member agencies including the Federal Reserve Board, the Nuclear Regulatory Commission, and the Federal Trade Commission (FTC), which

have universally been understood as valid for at least 87 years.  The district court's conclusion would also mean that *Humphrey's Executor* was wrong the day it was decided, because the FTC in 1935 also had what the district court would call "substantial executive power."  *See* Pub. L. No. 63-203, §§ 5, 6(g), 38 Stat. 717, 719-720, 722 (1914) (authorizing the FTC to issue cease-and-desist orders, to bring enforcement actions, and to issue regulations).

Even if the district court perceived "tension between" *Humphrey's Executor* and the Supreme Court's more recent decisions, the court's duty to apply controlling Supreme Court precedent was unchanged.  *Cochran v. SEC*, 20 F.4th 194, 206 n.11 (5th Cir. 2021) (en banc), *cert. granted* 142 S. Ct. 2707 (2022).  And as it stands, there can be no serious question that *Humphrey's Executor* applies to agencies like the Consumer Product Safety Commission.  In *Free Enterprise*, the Court explained that under *Humphrey's Executor*, Congress can, "under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause," and noted that the Court was not called upon "to reexamine any of [our] precedents" in deciding that case."  561 U.S. at 483.  In *Seila Law*, the Court identified the Consumer Product Safety Commission as a "traditional

independent agency," in contrast to the unconstitutionally structured CFPB, which was led by a single Director with removal restrictions. 140 S. Ct. at 2192-93. *Seila Law* also noted that the constitutional defect would be remedied if Congress were to restructure the CFPB—an agency with "substantial executive power," *id.* at 2199-2200—into a "multimember agency," *id.* at 2211. And in *Collins*, the Supreme Court observed that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies." 141 S. Ct. at 1785. Thus, in contrast to the district court's view that such differences are constitutionally dispositive, *see* ROA.634-36, the Supreme Court declared that "we do not think that the constitutionality of removal restrictions hinges on such an inquiry," *Collins,* 141 S. Ct. at 1785.

It is the Supreme Court's prerogative to decide whether to revisit its precedent. It is the responsibility of all other courts to apply that precedent. *See e.g.*, *State Oil Co. v. Kahn*, 522 U.S. 3, 20 (1997) (commending the court of appeals for correctly applying stare decisis and leaving to the Supreme Court the choice of whether "to overrule one of its precedents").

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be vacated and remanded.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

MARK B. STERN
JOSHUA M. SALZMAN
DANIEL AGUILAR

 */s/ Amanda L. Mundell*
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7236*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3469*
  *Amanda.L.Mundell@usdoj.gov*

August 2022

## CERTIFICATE OF SERVICE

I certify that on August 31, 2022, I filed a copy of this brief with the Clerk of Court for the Fifth Circuit Court of Appeals through the Court's CM/ECF system, which will serve counsel for all parties.

*/s/ Amanda L. Mundell*
Amanda L. Mundell

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7127 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Georgia 14-point font, a proportionally spaced typeface.

*/s/ Amanda L. Mundell*
Amanda L. Mundell

**ADDENDUM**

# TABLE OF CONTENTS

Federal Rule of Civil Procedure 54(b) .................................................... Add. 1

28 U.S.C. § 1291 ..................................................................................... Add. 1

15 U.S.C. § 2053(a) ................................................................................ Add. 1

**Federal Rule of Civil Procedure 54. Judgment; Costs**

\*     \*     \*

**(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

\*     \*     \*

**28 U.S.C. § 1291. Final decisions of district courts**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**15 U.S.C. § 2053. Consumer Product Safety Commission**

**(a) Establishment; Chairman**

An independent regulatory commission is hereby established, to be known as the Consumer Product Safety Commission, consisting of five Commissioners who shall be appointed by the President, by and with the advice and consent of the Senate. In making such appointments, the President shall consider individuals who, by reason of their background and expertise in areas related to consumer products and protection of the public from risks to safety, are qualified to serve as members of the Commission. The Chairman shall be appointed by the President, by and with the advice and consent of the Senate, from among the members of the

Commission. An individual may be appointed as a member of the Commission and as Chairman at the same time. Any member of the Commission may be removed by the President for neglect of duty or malfeasance in office but for no other cause.

\*    \*    \*