**No. 22-40328**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————

CONSUMERS' RESEARCH; BY TWO, L.P.,

Plaintiffs-Appellees,

v.

CONSUMER PRODUCT SAFETY COMMISSION,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Eastern District of Texas

———————————

**REPLY BRIEF**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

MARK R. FREEMAN
MARK B. STERN
JOSHUA M. SALZMAN
DANIEL AGUILAR
ANNA M. STAPLETON
  *Attorneys, Appellate Staff
  Civil Division, Room 7258
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 532-4747*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................1

ARGUMENT ....................................................................................... 4

I.    The District Court's Entry Of Partial Judgment Under Rule 54(b) Is Invalid Because Plaintiffs' Complaint Does Not Present Multiple Claims ................................................................................ 4

II.   Plaintiffs Lack Standing To Seek A Stand-Alone Declaratory Judgment .......................................................................................12

III.  The District Court's Constitutional Holding Is Foreclosed By Supreme Court Precedent....................................................................19

CONCLUSION ................................................................... 29

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                      **Page(s)**

*Ballew v. Continental Airlines, Inc.*,
   668 F.3d 777 (5th Cir. 2012) ...................................................................28

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ..................................................................................17

*Calcutt v. Federal Deposit Ins. Corp.*,
   37 F.4th 293 (6th Cir. 2022) ............................................................. 11, 18

*City of Arlington v. FCC*,
   569 U.S. 290 (2013) .................................................................................20

*Cochran v. U.S. SEC*,
   20 F.4th 194 (5th Cir. 2021)..............................................................14, 25

*Collins v. Mnuchin*:
   896 F.3d 640 (5th Cir. 2018) ...................................................................21
   938 F.3d 553 (5th Cir. 2019) ...................................................................21

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021)..................................................................... 11, 16, 26

*Community Fin. Servs. Ass'n of Am. v. CFPB*,
   51 F.4th 616, 2022 WL 11054082 (5th Cir. Oct. 19, 2022)................. 11, 18

*Eldredge v. Martin Marietta Corp.*,
   207 F.3d 737 (5th Cir. 2000) ......................................................1, 4-5, 6, 7

*Exela Enter. Sols., Inc. v. NLRB*,
   32 F.4th 436 (5th Cir. 2022) .................................................................. 27

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*:
   561 U.S. 477 (2010) .....................................................2, 13, 14, 26
   2007 WL 891675 (D.D.C. Mar. 21, 2007) ..................................................13

*Halliburton Co. Benefits Comm. v. Graves*,
  191 F. App'x 248 (5th Cir. 2006) .................................................................. 5

*Humphrey's Ex'r v. United States*,
  295 U.S. 602 (1935) ............................................................................... 19, 20

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ..................................................... 17, 26, 26-27

*Liberty Mut. Ins. Co. v. Wetzel*,
  424 U.S. 737 (1976) ....................................................................... 1, 5, 6, 11

*Morrison v. Olson*,
  487 U.S. 654 (1988) ...................................................................................... 20

*National Coal. for Men v. Selective Serv. Sys.*,
  969 F.3d 546 (5th Cir. 2020) ......................................................... 4, 19, 28

*PHH Corp. v. CFPB*,
  881 F.3d 75 (D.C. Cir. 2018) ................................................................ 20, 24

*Seatrain Shipbuilding Corp. v. Shell Oil Co.*,
  444 U.S. 572 (1980) ...................................................................................... 7

*SEC v. Blinder, Robinson & Co.*,
  855 F.2d 677 (10th Cir. 1988) ..................................................................... 21

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) ............................................... 3, 16, 21, 22, 23, 24, 26

*State Nat'l Bank of Big Spring v. Lew*,
  795 F.3d 48 (D.C. Cir. 2015) ...................................................................... 14

*Surefoot LC v. Sure Foot Corp.*,
  531 F.3d 1236 (10th Cir. 2008) ................................................................. 28

*Tetra Techs., Inc. v. Continental Ins. Co.*,
  755 F.3d 222 (5th Cir. 2014) ............................................................... 4, 6-7

*Texas v. United States*:
  945 F.3d 355 (5th Cir. 2019) ........................................................ 8
  340 F. Supp. 3d 579 (N.D. Tex. 2018) ...................................... 9
  352 F. Supp. 3d 665 (N.D. Tex. 2018).................................. 8, 9

*Ticor Title Ins. Co. v. FTC*,
  814 F.2d 731 (D.C. Cir. 1987) .................................................. 20

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................ 16

## Statutes:

Act of Feb. 4, 1887, ch. 104, 24 Stat. 379 .................................... 22

15 U.S.C. § 41 ................................................................................. 19

15 U.S.C. § 2053(a) ...................................................................... 10

## Other Authorities:

H. Black, *Handbook on the Law of Judicial Precedents* (1912) ................ 25

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016).................... 28

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' response brief only highlights the artificiality of the district court's Rule 54(b) judgment in this case. Plaintiffs defend the district court's "partial final judgment" as though it were routine for district courts to split off a legal premise of a litigant's claim and quickly enter final judgment declaring the court's assessment of that premise, without regard to the factual controversy or cause of action before the court. As our opening brief explained, both this Court and the Supreme Court have long admonished against allowing Rule 54(b) to be abused in this manner. "[A] complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief" under Rule 54. *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 743 n.4 (1976). Plaintiffs assert (Br. 61) that this Court "dismissed that language" in *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 741 (5th Cir. 2000), but this Court has never suggested that Rule 54(b) permits the sort of advisory opinion that the district court issued here. To the contrary, this Court has consistently made clear that partial judgment under Rule 54(b) is improper when all requested relief turns on the disposition of one legal theory.

The district court's error in entering the Rule 54(b) judgment here is particularly clear because plaintiffs would lack standing to challenge the

Consumer Product Safety Commission's (CPSC or Commission) structure in the absence of their Freedom of Information Act (FOIA) requests. Plaintiffs urge that they would independently have standing under *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010). But in *Free Enterprise*, a plaintiff was subject to pervasive regulation by the Board, required to register with the Board as a condition of doing business, and subject to a pending Board investigation for potential wrongdoing. In those circumstances, the Supreme Court held that the plaintiffs could pursue their claim against the Board in district court. By contrast, plaintiffs here are not regulated by the Commission, required to register with it, or subject to any discipline by it. Apart from their FOIA requests, they are strangers to the agency. If plaintiffs had filed a complaint seeking only the abstract declaration of law that the district court awarded, the complaint would have warranted immediate dismissal for lack of Article III standing. Rule 54(b) is not a vehicle for evading Article III's limitations.

Because the district court improperly entered partial final judgment, this Court should vacate and remand on that ground. But if the Court reaches the merits of plaintiffs' constitutional argument, it should reaffirm that a district court may not disregard or rewrite governing Supreme Court

precedent, even if the district court believes the Supreme Court might someday do so.  The Supreme Court has never held removal restrictions for heads of multi-member agencies to be unconstitutional, and it certainly did not do so in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), which addressed novel removal restrictions for an agency headed by a single Director.  On the contrary, *Seila Law* expressly contemplated that Congress could salvage removal protections for CFPB's leadership by "converting the CFPB into a multimember agency," *id.* at 2211, a suggestion that would be incoherent on plaintiffs' reading of that decision.  The district court's conclusion that removal restrictions are unconstitutional with regard to any agency that wields substantial executive power would impose limitations never recognized by the Supreme Court and would effectively render *Humphrey's Executor* a dead letter, as plaintiffs identify no agency that could have removal protections under the test applied by the district court.

The district court appeared to believe that *Seila Law* portends the overruling of *Humphrey's Executor*.  But as the Supreme Court has repeatedly stated, the prerogative to decide whether to overrule its own cases—indeed, the prerogative to decide whether to entertain that question at all—belongs to the Supreme Court and the Supreme Court alone.  This Court should reiterate that a district court does not have "license to

disregard or overrule [Supreme Court] precedent" on its own authority,
whatever it may believe the Supreme Court itself will do. *National Coal. for*
*Men v. Selective Serv. Sys.*, 969 F.3d 546, 550 (5th Cir. 2020) (per curiam).

## ARGUMENT

## I.    The District Court's Entry Of Partial Judgment Under Rule 54(b) Is Invalid Because Plaintiffs' Complaint Does Not Present Multiple Claims

Plaintiffs offer no persuasive defense of the district court's misuse of
Rule 54(b). The district court declared that the structure of the CPSC
violates the Constitution and purported to enter a final judgment
embodying that conclusion, yet it issued no ruling on the FOIA-related
claims for relief that plaintiffs used to initiate this dispute. That is a classic
advisory opinion: a naked conclusion of law, unconnected to any concrete
factual controversy. The Rule 54(b) mechanism, which exists to permit the
entry of partial final judgment on separate claims in litigation involving
multiple claims for relief, does not permit a district court to issue
declarations of law abstracted from any live controversy before the court.

It is axiomatic that "a district court does not resolve a 'claim' merely
by ruling on a threshold legal issue relevant to that claim." *Tetra Techs.,*
*Inc. v. Continental Ins. Co.*, 755 F.3d 222, 230 (5th Cir. 2014) (first citing
*Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740-42 (5th Cir.

2000); and then citing *Halliburton Co. Benefits Comm. v. Graves*, 191 F. App'x 248, 249 (5th Cir. 2006) (per curiam)).  The Supreme Court's decision in *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737 (1976), is illustrative.  The plaintiffs in that case sought various forms of relief based on claims of Title VII violations.  *Id.* at 740.  After the district court issued a liability ruling favorable to plaintiffs, *id.* at 740-42, the court issued a partial judgment under Rule 54(b) without addressing plaintiffs' requests for concrete relief, *see id.* at 742 ("They requested an injunction, but did not get one; they requested damages, but were not awarded any.").  The Supreme Court explained that the Rule 54(b) certification was improper because, even accepting "that the District Court's order was a declaratory judgment on the issue of liability, it nonetheless left unresolved respondents' requests for an injunction, for compensatory and exemplary damages, and for attorneys' fees." *Id.* at 742.

That ruling applies with full force here.  Each of plaintiffs' "counts" simply enumerates one aspect of the relief they seek for injuries allegedly arising from a single asserted constitutional violation.  Indeed, Count I explicitly seeks relief regarding the validity of the FOIA rule *and* the validity of the Commission's decisions on plaintiffs' FOIA requests.  *See* ROA.37. As in *Liberty Mutual*, those requests for relief stem from a single legal

theory—here, that the Commission's structure is unconstitutional. That single claim is not resolved until the district court addresses those remaining forms of relief. As this Court observed in *Eldredge*, "[t]he [Supreme] Court has recognized that 'a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief.'" 207 F.3d at 741 (quoting *Liberty Mut.*, 424 U.S. at 743 n.4).

Plaintiffs insist that *Eldredge* "dismissed that language" from *Liberty Mutual* (Br. 61), but this Court, of course, did not "dismiss" the Supreme Court's guidance. It stated, instead, that the "judicial crumbs" provided by the holdings in *Liberty Mutual* and other cases "have failed to lead the circuit courts to a consensus as to the handling of this confusing area of law" and that "various methods" have "percolated amongst the circuits." *Eldredge*, 207 F.3d at 741. That no single bright line test governs all factual permutations does not advance plaintiffs' argument.

To the contrary, this Court has stressed that, "[t]he lack of an articulable standard notwithstanding," there are several clear guideposts for assessing the validity of a Rule 54(b) certification—including, as most relevant here, that "a district court does not resolve a 'claim' merely by ruling on a threshold legal issue relevant to that claim." *Tetra Techs.*, 755

F.3d at 230.  And in *Eldredge* itself, this Court endorsed the "presumption

. . . against characterizing a pleading as containing multiple claims for relief

rather than a single claim" and held that the Rule 54(b) certification in that

case was improper.  *Eldredge*, 207 F.3d at 742.  That "a strong factual

overlap" exists between the counts illustrates that they are but separate

aspects of a single claim.  *Id.*

Plaintiffs' efforts to liken this case to *Seatrain Shipbuilding Corp. v.*

*Shell Oil Co.*, 444 U.S. 572 (1980), are similarly unavailing.  Br. 61-62.  The

*Seatrain* complaint sought relief on two related but separately resolvable

claims regarding the Secretary of Commerce's waiver of certain statutory

requirements for newly built ships:  (1) declaratory relief on a *general* claim

that the Secretary could *never* waive those requirements as to *any* ship, and

(2) injunctive relief on a *specific* claim that the Secretary's waiver as to a

particular ship constituted an abuse of discretion *even if* the Secretary

generally had authority to grant such waivers in some circumstances.

*Seatrain*, 444 U.S. at 580.  The Supreme Court held that the district court's

disposition of the general claim was a valid partial final judgment because it

completely disposed of the only relief sought in connection with that claim.

*Id.* at 583.  "There were, in short, two claims made and two quite different

sorts of relief sought."  *Id.* at 581.  Here, plaintiffs seek three forms of relief

on the basis of a single claim. Unlike in *Seatrain*, the second and third counts of the complaint here could not survive dismissal of the first count. The complaint presents no theory, for example, under which application of the Commission's FOIA rule might be valid as to some requests but not as to plaintiffs' requests. Instead, liability under all three counts hinges on one question of law: whether the Commission is unconstitutionally structured.

Plaintiffs are similarly wide of the mark in urging that this Court's vacated decision in *Texas v. United States*, 945 F.3d 355 (5th Cir. 2019), furnishes a "'persuasive' guide" for the analysis here. Br. 53; *see also Texas v. United States*, 352 F. Supp. 3d 665 (N.D. Tex. 2018). The complaint in that case listed multiple constitutional claims that depended on distinct legal theories. The plaintiffs there alleged that the challenged statutory provisions (1) exceeded the scope of Congress' Article I authority, (2) violated the Due Process Clause of the Fifth Amendment, and (3) violated the Tenth Amendment. *Texas*, 945 F.3d at 373 n.11. Plaintiffs also sought a declaratory judgment that agency rules promulgated pursuant to the Affordable Care Act (ACA) were unlawful and so violated the Administrative Procedure Act and an injunction prohibiting federal officials from enforcing the ACA. *Id.*

8

The district court first granted declaratory relief as to Count I (the Article I claim).  *See Texas v. United States*, 340 F. Supp. 3d 579, 605, 619 (N.D. Tex. 2018).  In briefing on a motion for clarification, the government argued that it appeared that the district court had not completed its adjudication of all forms of relief sought by plaintiffs and that the judgment did not, for that reason, satisfy Rule 54(b).[1]  The district court clarified its ruling, stating its view that the complaint presented multiple separately resolvable claims and that it would grant no further relief as to Count I. *Texas*, 352 F. Supp. 3d at 671.  The district court further explained that if its order on Count I were "reversed in whole or in part, the Plaintiffs could still seek relief under the theory put forth in Count II."  *Id*. at 670-71.  That was likewise true of the plaintiffs' APA claim, which "presuppose[d] . . . unconstitutionality but [sought] different relief," *id*. at 671, because there were two remaining theories under which the statute could be unconstitutional.  On that understanding, the government did not argue on appeal that partial judgment was improper.[2]

---

[1] *See* Federal Defendants' Response at 8, *Texas v. United States*, No. 4:18-cv-00167, 2018 WL 8262516 (N.D. Tex. Dec. 21, 2018).

[2] *See* United States Brief at 3-4, *Texas v. United States*, No. 19-10011, 2019 WL 2029722 (5th Cir. May 1, 2019).

The circumstances here are different.  Plaintiffs assert only one theory of constitutional error, and that theory is the basis for all three counts in the complaint.  As the district court itself acknowledged, "all three Counts assert that the removal restriction in 15 U.S.C. § 2053(a) is unconstitutional."  ROA.648.  That statement only makes sense as an acknowledgement that the three counts of the complaint do not merely have some overlap (as was true in *Texas*) but are directed to a single claim in the sense of Rule 54(b).

In explaining the decision to enter partial final judgment, the district court also noted that resolving Counts II and III would require the court to decide additional questions about the appropriate relief.  *See* ROA.648.  That is not a proper basis for entering partial final judgment under Rule 54(b).  A plaintiff may seek multiple forms of relief on a single legal theory, and some of those forms of relief may require a court to decide additional questions (*e.g.*, irreparable injury) or consider additional defenses (*e.g.*, unclean hands) not relevant to others.  Some of those additional questions may be difficult or novel.  Nevertheless, the plaintiff has but one "claim" for purposes of Rule 54(b).  That was the holding of *Liberty Mutual*:  the Rule 54(b) judgment was improper there because, although the district court had resolved liability, "it nonetheless left unresolved respondents' requests for

10

an injunction, for compensatory and exemplary damages, and for attorneys' fees." *Liberty Mutual*, 424 U.S. at 742.

Finally, the errors underlying the district court's analysis, and its rationale for certification, are further underscored by this Court's recent decision in *Community Financial Services Ass'n of America v. CFPB*, 51 F.4th 616 (5th Cir. Oct. 19, 2022), which clarified the remedial analysis to be undertaken under the principles established by the Supreme Court in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), after removal restrictions are found to be invalid.  The district court here believed that "*Collins* does not address requests for prospective relief" and declined to address the government's motion to dismiss Counts II and III of the complaint because "the Fifth Circuit has yet to clarify the requirements for obtaining retrospective relief post-*Collins*."  ROA.641, 642 n.6.  In *Community Financial Services*, this Court clarified that "*Collins* did not rest on a distinction between prospective and retrospective relief"; that a court's analysis must consider whether a challenged removal protection actually inflicted harm; and that the analysis "remains the same whether the petitioner seeks retrospective or prospective relief."  51 F.4th at 631 (quoting *Calcutt v. Federal Deposit Ins. Corp.*, 37 F.4th 293, 316 (6th Cir. 2022)).  *Community Financial Services* makes clear that the same remedial analysis applies to all aspects

11

of plaintiffs' claims and highlights the district court's error in treating the declaratory judgment as distinct from its ruling on the FOIA issues that generated the suit.

## II.    Plaintiffs Lack Standing To Seek A Stand-Alone Declaratory Judgment

Principles of Article III standing confirm that plaintiffs cannot seek a declaratory judgment about the structure of the Commission as a stand-alone claim separate from the alleged FOIA-related injuries that gave rise to this suit.  To defend the district court's Rule 54(b) certification, plaintiffs are at pains to divorce their request for declaratory relief from the FOIA-related injuries that they claim to have suffered.  They stress that the only injury supporting the declaratory judgment count of the complaint is "the threat of being subject to a regulatory scheme . . . lacking Article II oversight," as distinguished from the other counts of the complaint, which assert financial injury and informational injury.  Br. 55-56 (quoting ROA.624).  Similarly, they declare that "the relevant injury here is not an increase in costs associated with plaintiffs' pending and future FOIA requests."  Br. 37.  Instead, the only relevant allegation is that "those requests will be handled by an agency unconstitutionally shielded from presidential oversight." *Id.*

These assertions, which are untethered from any alleged action by the Commission, do not establish standing to assert a freestanding challenge to the agency's structure.  Plaintiffs contend that their situation is identical to that of the plaintiffs in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), and they cite the district court's conclusion that they are "materially indistinguishable from the challengers in *Free Enterprise*."  Br. 12.  But plaintiffs' circumstances bear little similarity to those of the plaintiffs in *Free Enterprise*.  In *Free Enterprise*, the Court explained that the accounting-firm plaintiff in that case was subject to pervasive regulation by a Board with "expansive powers to govern" its activities.  561 U.S. at 485.  The firm was required to "register with the Board, pay it an annual fee, and comply with its rules and oversight," and failure to follow Board rules could constitute "a federal crime punishable by up to 20 years' imprisonment or $25 million in fines." *Id.*  That firm, already under "formal investigation" by the Board, *id.* at 487, declared that compliance with the Board's auditing standards to date had "substantially increased the time and expense of its public company audits and reduced both its client capacity and its overall profits," *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 2007 WL 891675, at *2 (D.D.C. Mar. 21, 2007).  Against that backdrop, the Court concluded that

the plaintiffs were entitled to seek "declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive," *Free Enterprise*, 561 U.S. at 513.

In contrast, plaintiffs here are not regulated by the Commission. They are not required to register with the Commission or subject to disciplinary investigations by it. The Commission exercises no coercive power over them at all. It cannot restrict the terms on which plaintiffs conduct private commercial transactions, nor can it impose disclosure or other reporting obligations on plaintiffs. *Cf. State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (explaining that the plaintiff bank had standing to challenge the constitutionality of CFPB because "[t]he Bank is not a mere outsider asserting a constitutional objection to the Bureau," which had "already exercised its broad regulatory authority to impose new obligations on banks, including State National Bank"). And plaintiffs, who are not the respondents in any enforcement proceeding, never "hav[e] to appear before" the Commission, despite their assertions to the contrary. Br. 42 (quoting *Cochran v. SEC*, 20 F.4th 194, 209 (5th Cir. 2021)).

Plaintiffs urge that they should nevertheless be treated as "entities 'regulated by' the CPSC" because they have alleged that they are frequent

FOIA requesters and rely on FOIA for their operations.  Br. 44.  But that is not the same as being a regulated party.  Were the Public Accounting Oversight Board abolished, the *Free Enterprise* plaintiffs would have been able to conduct their business with greater freedom from governmental regulation.  By contrast, were the Commission abolished, plaintiffs here would enjoy no greater freedom of action (and would no longer even be able to seek information from the Commission).[3]  Indeed, if submitting a FOIA request were sufficient to qualify as a regulated entity, any person could manufacture standing to challenge the constitutionality of any federal agency merely by filing such a request.

In contrast to the regulated entities in *Free Enterprise*, plaintiffs experience no injury from the Commission's existence.  Their only interaction with the Commission has been to submit FOIA requests and to receive the requested documents.  Had they never submitted a FOIA request, they would indisputably lack standing to sue.  They are entitled to seek relief for alleged FOIA-related injuries, assuming that plaintiffs can demonstrate prejudice.  But they have no standing to pursue freestanding

---

[3] Indeed, while the opening sentences of plaintiffs' brief highlight the Commission's authorities to ban products, file enforcement suits, and impose monetary penalties (Br. 1), plaintiffs do not and cannot allege that there is any prospect that the Commission will take such regulatory actions against *them*.

constitutional claims untethered from the factual controversy that gave rise
to this suit.

Plaintiffs argue at length that parties outside of highly regulated
industries can bring separation-of-powers challenges.  Br. 38-41.  But as
this Court and the Supreme Court often observe, standing is not dispensed
in gross.  *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208
(2021).  In each case cited by plaintiffs, the party asserting a removal
challenge identified specific injuries caused by the governmental defendant.
In *Seila Law*, the plaintiff was the target of an agency enforcement action
and was able to assert a separation of powers claim because it sustained
injury "from an executive act that allegedly exceeds the official's authority,"
namely, being "compelled to comply with the civil investigative demand
and to provide documents it would prefer to withhold."  *Seila Law LLC v.
CFPB*, 140 S. Ct. 2183, 2196 (2020).  In *Collins*, the plaintiff shareholders—
who were seeking only retrospective relief by the time of the Supreme
Court's decision—asserted that "the [Federal Housing Finance Agency]
transferred the value of their property rights in Fannie Mae and Freddie
Mac to Treasury," an allegation the Court described as the "sort of
pocketbook injury [that] is a prototypical form of injury in fact."  *Collins*,
141 S. Ct. at 1779; *see also id.* at 1780 (noting the shareholders' claims for

prospective relief were moot). Similarly, in *Bowsher v. Synar*, 478 U.S. 714 (1986), the individual plaintiff alleged a pocketbook injury because he challenged a sequestration order that directly financially injured him through the cancellation of a cost-of-living increase. *Id.* at 719. And in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), the petitioner was appealing from an administrative determination in an enforcement proceeding that imposed significant monetary remedies and barred the petitioner from various securities industry activities. *Id.* at 450.

Here, plaintiffs' declaratory judgment claim asserts no comparable injury. The Commission has interacted with plaintiffs only on plaintiffs' own chosen terms: plaintiffs have solicited information from the Commission by voluntarily submitting FOIA requests, and the agency has responded to those requests by producing the documents that plaintiffs have sought—and, to date, without even charging any fees (ROA.480-481). Because plaintiffs' interactions with the agency are wholly consensual and free from any agency mandate, they cannot allege injury from the mere existence of the Commission's removal protections, untethered to any adverse action taken by the Commission against them.

The deficiencies of plaintiffs' allegations of standing are further exacerbated by the fact that there is no reason to believe that the

Commissioners themselves, rather than lower-ranking staff, will play any role in adjudicating plaintiffs' future FOIA requests.  This disconnect underscores the speculative nature of plaintiffs' claims that they suffer injury from the Commissioners' removal protections.  Plaintiffs dismiss the relevance of this point, asserting that they are under no obligation to assert any "plausible nexus" between the challenged removal restrictions and the adjudication of their FOIA requests because (plaintiffs say) "*Collins* does not apply to plaintiffs seeking prospective relief."  Br. 46-47 (first quoting ROA.640; and then quoting ROA.641).  But after plaintiffs' brief was filed, this Court rejected the premise of plaintiffs' argument, clarifying that "*Collins* did not rest on a distinction between prospective and retrospective relief," and the "determination as to whether an unconstitutional removal protection 'inflicted harm' remains the same whether the petitioner seeks retrospective or prospective relief."  *Community Financial Services*, 2022 WL 11054082, at *8-9 (quoting *Calcutt*, 37 F.4th at 316).  Plaintiffs also argue that the agency's General Counsel, who is responsible for the adjudication of FOIA requests, is himself impermissibly insulated from presidential control (Br. 48-50), but this passing swipe at an entirely different officer only underscores the disconnect between plaintiffs' actual

controversy with the agency and their freestanding claim for declaratory relief regarding the Commissioners' removal protections.

## III.   The District Court's Constitutional Holding Is Foreclosed By Supreme Court Precedent

For the foregoing reasons, the district court's partial final judgment should be vacated and the case remanded so that the district court can resolve the claims for relief.  If the Court reaches the merits, however, it should reiterate that a district court does not have "license to disregard or overrule [Supreme Court] precedent" until and unless the Supreme Court itself sets that precedent aside.  *National Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 550 (5th Cir. 2020) (per curiam).

Since the Supreme Court upheld the removal restrictions for the multi-member Federal Trade Commission in 1935, *Humphrey's Executor* has been consistently understood to permit Congress to specify that members of similar multi-member bodies may be removed only for "inefficiency, neglect of duty, or malfeasance in office."  *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935) (quoting 15 U.S.C. § 41).  The Supreme Court has not reached a different conclusion with respect to any multi-member agency.

As we explained in our opening brief (at 26), the Commission is among the multi-member agencies encompassed by the rule of *Humphrey's*

*Executor*.  Justice Scalia confirmed that the Commission was encompassed by *Humphrey's Executor*, *see Morrison v. Olson*, 487 U.S. 654, 724-25 (1988) (Scalia, J., dissenting), as did then-Judge Kavanaugh when he collected examples of constitutionally structured "independent agencies [that] exercise[e] substantial executive authority," *PHH Corp. v. CFPB*, 881 F.3d 75, 173 (D.C. Cir. 2018) (Kavanaugh, J., dissenting).

The district court declared that *Humphrey's Executor* extends only to bodies exercising legislative or judicial rather than executive power and that the Supreme Court understood the FTC to be exercising only such authority at the time of its decision in 1935.  ROA.629-634.  In fact, the Supreme Court was well aware in 1935 that "[t]he so-called legislative functions performed by the [FTC] do not differ in nature from those performed by the regular executive departments."  United States Brief at 24, *Humphrey's Executor*, 295 U.S. 602 (No. 667), 1935 WL 32965. Indeed, although agencies may engage in rulemaking or adjudication, those activities "are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013).

Accordingly, the courts of appeals have faithfully applied *Humphrey's Executor* in cases involving the SEC and the modern Federal Trade

Commission, which all agree exercise executive power. *See SEC v. Blinder,*

*Robinson & Co.*, 855 F.2d 677, 682 (10th Cir. 1988) (holding that SEC did

not operate in violation of the separation-of-powers under *Humphrey's*

*Executor*); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 740-41 (D.C. Cir. 1987)

(explaining that "the FTC has been exercising law enforcement powers free

from successful constitutional challenge ever since that seminal decision").

This Court in *Collins v. Mnuchin* similarly recognized that the FTC in

*Humphrey's Executor* exercised "executive" authority "at least to some

degree" and that the Supreme Court "has not, however, formally abrogated

the *Humphrey's Executor* holding." *Collins v. Mnuchin*, 896 F.3d 640, 671

n.241 (5th Cir. 2018) (per curiam) (quoting *Morrison*, 487 U.S. at 690

n.28); *see also Collins v. Mnuchin*, 938 F.3d 553, 587 (5th Cir. 2019) (en

banc) (holding that *Humphrey's Executor* applies only to "multi-member

bodies of experts" and not to agencies with a single head).

In the face of this formidable body of precedent and practice, the

district court reached a novel and contrary result by embracing a flawed

reading of *Seila Law*. The dispositive factor in that case was the CFPB's

"leadership by a single individual" with removal restrictions, which

"violate[d] the separation of powers," 140 S. Ct. at 2197, as the "single-

Director structure [wa]s an innovation with no foothold in history or

tradition," *id.* at 2202.[4]  Indeed, given that plaintiffs emphasize that the

CPSC served in some respects as a model for the CFPB (Br. 21), it is notable

that *Seila Law*'s reasoning does not turn on any characteristic shared by the

CPSC and the CFPB.  The Supreme Court instead relied exclusively on the

major difference between them, namely, that one is a multi-member agency

while the other is headed by a single Director.  If the fatal defect in *Seila*

*Law* was CFPB's exercise of substantial executive power, the Court could

have simply said so and would have had no reason to parse, as it did, the

historical record regarding single-headed agencies.  *See Seila Law*, 140 S.

Ct. at 2201-02.  This analysis was necessary, however, because *Seila Law*'s

"rationale" rested on CFPB's novel structure.  *But see* Br. 30 (asserting that

the United States—which argued that the CFPB's removal restrictions were

unconstitutional—somehow ignores *Seila Law*'s rationale).

Disregarding the actual holding and reasoning of *Seila Law*, the

district court and plaintiffs rely on a brief passage in the opinion that

characterized *Humphrey's Executor* and *Morrison* as establishing

exceptions for "multimember expert agencies that do not wield substantial

executive power, and . . . for inferior officers with limited duties and no

---

[4] By contrast, multi-member agencies with removal restrictions have
existed for 135 years.  *See* Act of Feb. 4, 1887, ch. 104, § 11, 24 Stat. 379, 383
(creating the Interstate Commerce Commission).

policymaking or administrative authority." *Seila Law*, 140 S. Ct. at 2199-2200. The district court agreed with plaintiffs' assertion that in this characterization of past precedents, which the Supreme Court did not purport to revisit, the Court implicitly overruled *Humphrey's Executor* on its own facts and set aside nearly a century's worth of Supreme Court precedent, congressional legislation, and Executive Branch practice and understanding predicated upon that decision. Indeed, although they demur that the Court need not decide what consequences would ensue from affirming the district court's conclusion, plaintiffs offer no example of *any* multi-member federal agency whose structure would be constitutional under the district court's understanding. To accept plaintiffs' argument is to believe that the Supreme Court *sub silentio* abrogated one of its seminal precedents concerning the constitutional separation of powers.

That account of *Seila Law* is not plausible. Removal restrictions for heads of multi-member agencies were not at issue in *Seila Law*, and the Supreme Court did not in passing announce that such removal restrictions would be unconstitutional in any multi-member agency that wielded more than *de minimis* executive power. The point of the Court's characterization in that passage was to summarize the distinction it has consistently drawn between the multifaceted functions and historical practices of multi-

member agencies—what the Court explained was the original domain of *Humphrey's Executor*—and traditional, single-headed Executive Branch agencies directly accountable to the President.  Notably, the *Seila Law* passage stressed by plaintiffs cites with approval to an opinion by then-Judge Kavanaugh that describes *Humphrey's Executor* as standing for the proposition that Congress can create independent multimembers agencies and contrasts that historically rooted practice with the CFPB's novel single-Director structure.  *See Seila Law*, 140 S. Ct. at 2200; *PHH Corp.*, 881 F.3d at 170 (Kavanaugh, J., dissenting); *see also id.* at 173 (describing the CPSC as falling within a long historical tradition of "independent agencies exercising substantial executive authority").  And any remaining doubt as to whether the Supreme Court intended to functionally jettison *Humphrey's Executor* is dispelled by *Seila Law*'s observation that Congress could cure the identified constitutional infirmity in the CFPB's structure by "converting the CFPB into a multimember agency," 140 S. Ct. at 2211—a suggestion impossible to reconcile with the district court's understanding.[5]

---

[5] Plaintiffs emphasize (Br. 31) certain statements made in the Supreme Court brief filed by the United States in *Seila Law*.  But that brief contended that *Humphrey's Executor* must be understood as turning on the *structure* of the FTC, rather than the nature of the power it exerted.  United States Brief at 27, *Seila Law*, 140 S. Ct. 2183 (No. 19-7), 2019 WL 6727094.  It did not argue that every federal agency that exercises executive

*Continued on next page.*

This Court, sitting en banc, recently reiterated that lower courts may not properly conclude that the Supreme Court has overruled a prior decision "*sub silentio* merely because its reasoning . . . appear[s] inconsistent with later cases." *Cochran*, 20 F.4th at 206 n.11 (quotation marks omitted). Once the Supreme Court has upheld a statute against a constitutional challenge—including the statutory removal restrictions in *Humphrey's Executor*—"an inferior court must accept it as a final adjudication of that question in its broadest extent, and cannot enter into a fresh inquiry into the validity of the statute . . . for it is a presumption of law that all existing reasons that could be presented against the statute were considered by the appellate court and held insufficient." H. Black, *Handbook on the Law of Judicial Precedents* 295 (1912). And in doing so, the Court must not "construe or interpret" the Supreme Court's opinion "for the purpose of evading or distinguishing away a pertinent decision." *Id.* at 297.

That is particularly clear here because the Supreme Court has repeatedly acknowledged the continuing validity of *Humphrey's Executor* as to federal multi-member agencies generally. *Free Enterprise*, for

---

power must without exception be headed by individuals subject to removal at will by the President.

example, provided a remedy for a separation-of-powers violation by severing removal restrictions for inferior officers while leaving intact removal restrictions for the SEC, holding that this remedy rendered the SEC "fully responsible" and subject to constitutionally required "Presidential oversight." *Free Enterprise*, 561 U.S. at 509; *see also id.* at 483 ("The parties do not ask us to reexamine" *Humphrey's Executor* or other removal "precedents, and we do not do so."). Similarly, as already noted, *Seila Law* held that Congress was free to cure the identified constitutional infirmity, if it wished, by "converting the CFPB into a multimember agency." 140 S. Ct. at 2211. And *Collins* explained that the Supreme Court's removal precedents are not to be applied based on a comparative evaluation of an agency's authority, as "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." 141 S. Ct. at 1785.

Plaintiffs also mistakenly contend (at 32-33) that this Court has already adopted their argument, relying on *Jarkesy*, 34 F.4th 446. But *Jarkesy* held that "even principal officers may retain for-cause protection when they act as part of an expert board," citing *Seila Law*. *Jarkesy*, 34

F.4th at 463.  It was only when those removal restrictions for the SEC were combined with removal restrictions for administrative law judges that the Court saw a constitutional infirmity.  *Id.* ("[A] problem arises when both of those protections act in concert.").  The SEC undoubtedly qualifies as an agency that exercises substantial executive authority, from rulemaking to bringing enforcement actions—if it were already clear that under *Seila Law* the SEC could not possess any removal restrictions, then the fact that those officers serve "as part of an expert board" would have been irrelevant to *Jarkesy*'s analysis.[6]

The district court, in sum, had no warrant to depart from *Humphrey's Executor* when the Supreme Court has not done so.  It is the Supreme Court's prerogative to decide whether to overrule its own cases (and to decide whether to take up the question at all).  As a "'strict stare decisis' court," this Court "cannot ignore a decision from the Supreme Court," and it does not have "license to disregard or overrule [Supreme

---

[6] Plaintiffs' citation to *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436 (5th Cir. 2022), is even further afield, as that case concerned whether a single officer—not a multi-member board—possessed implied statutory removal restrictions.  *See id.* at 441 ("[N]o provision of the [statute] protects the General Counsel of the NLRB from removal.").  And this Court's quotation of *Seila Law*'s description of *Humphrey's Executor*, *id.* at 444, has no bearing on the scope or continuing validity of that precedent.

Court] precedent." *National Coal. for Men*, 969 F.3d at 549-50 (quoting *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 782 (5th Cir. 2012)). That rule is "both wise and necessary: it promotes consistency and predictability while discouraging adventurous second-guessing by widely dispersed subaltern judges." Bryan A. Garner et al., *The Law of Judicial Precedent* 30 (2016). Even if this Court agrees that plaintiffs have identified a meaningful tension between phrases in *Seila Law* and the Supreme Court's other decisions, the task of a "federal appellate court is to follow the Supreme Court's directions, not pick and choose among them as if ordering from a menu." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1243 (10th Cir. 2008) (Gorsuch, J.).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be vacated and the case remanded.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK R. FREEMAN
MARK B. STERN
 */s/ Joshua M. Salzman*
JOSHUA M. SALZMAN
DANIEL AGUILAR
ANNA M. STAPLETON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7258*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4747*
  *Joshua.Salzman@usdoj.gov*

November 2022

**CERTIFICATE OF SERVICE**

I certify that on November 14, 2022, I filed a copy of this brief with the Clerk of Court for the Fifth Circuit Court of Appeals through the Court's CM/ECF system, which will serve counsel for all parties.

*/s/ Joshua M. Salzman*
Joshua M. Salzman

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,093 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Georgia 14-point font, a proportionally spaced typeface.

*/s/ Joshua M. Salzman*
Joshua M. Salzman