No. 22-40328

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

CONSUMERS' RESEARCH; BY TWO, L.P.,

Plaintiffs-Appellees,

v.

CONSUMER PRODUCT SAFETY COMMISSION,

Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of Texas

## OPPOSITION TO PETITION FOR REHEARING EN BANC

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

MARK R. FREEMAN
MARK B. STERN
JOSHUA M. SALZMAN
DANIEL AGUILAR
ANNA M. STAPLETON
  *Attorneys, Appellate Staff
  Civil Division, Room 7266
  U.S. Department of Justice
  950 Pennsylvania Ave., NW
  Washington, DC 20530
  (202) 514-5432*

**INTRODUCTION**

Periodically, a litigant asks this Court to refuse to apply an older Supreme Court precedent, asserting that though it has never been overruled, the precedent's reasoning has been eroded by subsequent developments. This Court has consistently declined such invitations, insisting—correctly—that the proper course is to adhere to Supreme Court precedent until that Court directs otherwise. This practice is grounded in the recognition that "[t]he Supreme Court has sole authority to overrule its own decisions." *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 782 (5th Cir. 2012). Thus, even when the "underpinning of the controlling Supreme Court decision has changed," that "does not grant a court of appeals license to disregard or overrule that precedent." *National Coalition for Men v. Selective Service System*, 969 F.3d 546, 549-50 (5th Cir. 2020) (per curiam).

The panel majority in this case properly adhered to that precept, refusing to accept plaintiffs' argument that the Supreme Court has implicitly abrogated *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), a decision that its defenders and critics alike recognize as one of the most consequential separation-of-powers decisions of the past hundred years. *Humphrey's Executor* held that Congress may constitutionally

provide removal restrictions for the heads of multimember federal agencies, such that the President may only remove them "for cause," *id.* at 629; *see* 15 U.S.C. § 41. Since *Humphrey's Executor*, "removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the Federal Trade Commission, the Interstate Commerce Commission, and"—as relevant here—"the Consumer Product Safety Commission." *Morrison v. Olson*, 487 U.S. 654, 724-25 (1988) (Scalia, J., dissenting) (citations omitted); *see also id.* at 692 n.31 (majority opinion) (citing the CPSC's removal protections with approval).

As the Supreme Court has continued to develop its separation-of-powers jurisprudence, it has repeatedly and explicitly declined to overrule *Humphrey's Executor*. In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Court declined to "reexamine" *Humphrey's Executor*, *id.* at 483, and held that the Securities and Exchange Commission was subject to constitutionally sufficient "Presidential oversight," even though those Commissioners were understood to be insulated from at-will removal by the President, *id.* at 509. In *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), the Court held that *Humphrey's Executor* did not extend to agencies headed by a single officer,

but explained that Congress could cure any constitutional infirmities by "converting the CFPB into a multimember agency," *id.* at 2211.

Plaintiffs here challenge the removal protections of the CPSC Commissioners. They do not dispute that the CPSC is "a prototypical traditional independent agency, run by a multimember board" that adheres to the structural model approved in *Humphrey's Executor*. Panel Op. 18 (quotation marks omitted). Instead, they insist that *Seila Law* cabined *Humphrey's Executor* to its precise facts, rendering it applicable only to the Federal Trade Commission as it existed in 1935.

But *Seila Law* did "not revisit [the Supreme Court's] prior decisions allowing certain limitations on the President's removal power." *Seila Law*, 140 S. Ct. at 2192. It simply declined "to extend those precedents to [a] novel context of an independent agency led by a single Director." *Id.* The panel majority here properly acknowledged that even if aspects of the reasoning in "*Seila Law* 'cast[] doubt' on the constitutionality of agencies like the Commission," *Humphrey's Executor* "still protects the Commission" unless and until the Supreme Court revisits that decision. Panel Op. 20-21. A separate unanimous panel of this Court recently reached an analogous result in rejecting a *Seila Law*-based challenged to

the removal protections of modern FTC Commissioners. *See Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023).

As nine judges of this Court observed earlier this month, the task of "threading the needle between" applicable Supreme Court precedent and subsequent case law is "best reserved for the court that wrote those opinions." *See Landor v. Louisiana Department of Corrections and Public Safety*, --- F.4th ---, 2024 WL 439159, at *1 (5th Cir. 2024) (Clement, J., joined by Jones, Stewart, Graves, Higginson, Engelhardt, Wilson, Douglas, and Ramirez, JJ., concurring in the denial of rehearing en banc). This Court should deny rehearing and allow the Supreme Court to determine whether *Humphrey*'s *Executor*—and the constitutionality of the many federal agencies that Congress established over the past century in reliance on *Humphrey's Executor*'s core holding—should be reconsidered in light of *Seila Law*.

## BACKGROUND AND PROCEDURAL HISTORY

**1.** Congress created the CPSC in 1972 to address findings that 20 million Americans "were injured each year in the home as a result of accidents connected with consumer products," and "that industry self-regulation, the common law, existing federal programs, and state and local agencies were inadequate to protect the public from this excessive hazard."

Antonin Scalia & Frank Goodman, *Procedural Aspects of the Consumer Product Safety Act*, 20 UCLA L. Rev. 899, 900-01 (1973).  The CPSC Commissioners "are removable only for 'neglect of duty or malfeasance in office,'" which "generally parallels" removal restrictions "applicable to the other principal independent regulatory commissions."  *Id.* at 904.  Congress enacted those restrictions on the basis of *Humphrey's Executor*, which—as then-professor Scalia explained—"established Congress' right to insulate such agencies from executive control."  *Id.* at 904 & n.41.

The Commission collects and publishes data on how consumer products can cause harm and how to prevent that harm.  15 U.S.C. §§ 2054, 2055a, 2056.  The Commission has authority to "promulgate consumer product safety standards . . . reasonably necessary to prevent or reduce an unreasonable risk of injury."  *Id.* § 2056(a).  The Commission can also seek civil penalties for violations of the consumer safety laws, *id.* § 2069, and may file injunctive actions in district court, *id.* § 2071.

**2.**  Plaintiffs are Consumers' Research and By Two, LP.  They do not make, sell, or distribute consumer products; they are not regulated by the Commission, nor are they subject to any Commission enforcement action.  Instead, plaintiffs assert that they are educational organizations and have

filed requests for Commission documents under the Freedom of Information Act (FOIA).

Plaintiffs submitted FOIA requests to the Commission related to voluntary safety standards for certain products and records related to certain brands of drop-side cribs. ROA.23-27. Plaintiffs also requested that the Commission waive fees for their FOIA requests. ROA.23-27. As to the safety standards, the Commission's staff initially responded that they could not produce the requested documents because they contained copyrighted material. ROA.24, 27. As to the drop-side cribs, the Commission's staff explained that it needed more time to process the request. ROA.434, 437. The Commission did not assess plaintiffs any fees. ROA.123-24, 434-38. Plaintiffs filed an administrative appeal, and the Commission's acting General Counsel directed a further search for any responsive records. *See* ROA.28-30, 425-32, 616-17.

After plaintiffs filed this suit, Commission staff completed their review and informed plaintiffs that they had "located responsive records" and obtained permission from "the copyright holder of these records" to provide plaintiffs with physical copies. ROA.587. The Commission also provided plaintiffs with all responsive, non-exempt records relating to their drop-side crib requests, ROA.655-57, and explained that the Commission

was unable to find any responsive records for the remaining requests, ROA.584. The Commission did not charge any fees to plaintiffs. ROA.434-38, 580-88.

**3.** While the agency was still processing their FOIA requests, plaintiffs sued the Commission in district court. ROA.11. Plaintiffs sought (1) a declaratory judgment that the statutory removal restrictions for the Commissioners in 15 U.S.C. § 2053(a) violate Article II of the Constitution, ROA.35-37, 41; (2) an "order setting aside" a Commission-rule related to FOIA fees, based on their claim that the Commissioners' removal restrictions are unconstitutional, ROA.38-39, 41; and (3) an "order compelling the Commission to process" their FOIA requests and applications for fee waivers, based on their claim that the Commissioners' removal restrictions are unconstitutional, ROA.39-41.

Invoking Federal Rule of Civil Procedure 54(b), the district court entered partial final judgment in favor of plaintiffs on the first count of the complaint, declaring that the Commissioners' removal restrictions were unconstitutional—the court issued no other relief besides that declaration. ROA.612-13, 649. The court recognized that *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), upheld a restriction on the President's removal power for members of the FTC. ROA.629-30. The court

concluded, however, that "*Humphrey's Executor* does not apply" because "the Commission exercises substantial executive power." ROA.629.

**4. a.** The Commission appealed, arguing that—under normal principles of *stare decisis* and precedent—the district court could not abrogate *Humphrey's Executor* and that such a decision must be left to the Supreme Court. The Commission also argued that it was improper to issue a partial final judgment under Rule 54(b) on "the issue of liability" while leaving unresolved plaintiffs' other requests for relief, which were based on the same "single legal theory . . . applied to only one set of facts." *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 742-43 (1976). The Commission also contended that plaintiffs—who are not regulated by the Commission or subject to any enforcement action—lack standing to seek a stand-alone declaratory judgment regarding the agency's constitutional structure, separate from any claim related to their FOIA requests.

**b.** A panel of this Court unanimously held that it possessed jurisdiction over the appeal, Panel Op. 7-13, and a majority reversed the district court on the merits, *id.* at 13-22. The majority explained that "our role in the judicial architecture requires us only to map—not adjust—the borders of" *Humphrey's Executor*, and "[a]s best we can gather, the Supreme Court has not yet limited"—rather than declined to extend—"that

decision." *Id.* at 14. *Humphrey's Executor* applies to "any 'traditional independent agency headed by a multimember board'—and thus still protects the Commission." *Id.* (quoting *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2193 (2020)). "If it were otherwise," then "dozens of other agencies would all be unconstitutionally structured," and the "Supreme Court has not yet directly embraced that conclusion." Panel Op. 14.

The majority explained that the Commission "fits squarely within what our en banc court described just a few years ago as 'the recognized exception for independent agencies.'" Panel Op. 18-19. The majority acknowledged that recent Supreme Court decisions may have "cast[] doubt" on the continuing validity of *Humphrey's Executor*, but respectfully observed that it remains the Supreme Court's "prerogative [to] overrul[e] its own decisions." *Id.* at 20-21. Thus, if *Humphrey's Executor* "compels us to uphold the constitutionality of the FTC's removal restrictions today, even when that agency's 'powers may have changed since' 1935, precedent also compels us to uphold the removal restrictions of a structurally identical agency." *Id.* at 20 n.86.

Judge Jones partially dissented and would have held that removal restrictions for multimember federal agencies that "exercise executive power" are unconstitutional. Panel Op. 25 (Jones, J., concurring in part

and dissenting in part). But Judge Jones agreed with the majority that the "Supreme Court has created uncertainty that only it can ultimately alleviate." *Id.* at 23.

## ARGUMENT

The panel correctly held that it is the prerogative of the Supreme Court to decide whether and when to overrule its own decisions. Although plaintiffs protest that they do not ask this Court to "overrule" *Humphrey's Executor*, the plain import of their argument is that *Humphrey's Executor* was wrongly decided on its own facts. The panel properly held that such questions are for the Supreme Court alone. The petition for rehearing en banc should be denied.

**A.** In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of tenure protections for a commissioner of the multimember FTC, who could be removed only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 619-20 (quoting 15 U.S.C. § 41). The Court found "[i]t plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" of a commission like the FTC. *Id.* at 629. In reaching that conclusion, the Court described the FTC's duties as "predominantly quasi judicial and quasi legislative." *Humphrey's Executor v. United States*, 295 U.S. 602, 624

(1935).  However, the FTC in 1935 also exercised what modern jurists would doubtless regard as substantial executive power.  *See* Pub. L. No. 63-203, §§ 5, 6(g), 38 Stat. 717, 719-720, 722 (1914) (authorizing the FTC to issue cease-and-desist orders, to bring enforcement actions, and to issue regulations); *see also City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (explaining that agency "legislative" and "judicial" actions "are exercises of . . . the 'Executive Power'").  And the Supreme Court later applied *Humphrey's Executor* while rejecting the argument that the President must have removal power over all officials who exercise purely executive power.  *See Morrison v. Olson*, 487 U.S. 654, 687-93 (1988); *see also Buckley v. Valeo*, 424 U.S. 1, 140-41 (1976) (citing *Humphrey's Executor* for the proposition that "the President may not insist that" functions "be delegated to an appointee of his removable at will" merely because those functions have some connection to "the administration and enforcement of public law").

In the decades since *Humphrey's Executor* was decided, Congress has acted in reliance on that decision in creating dozens of boards and commissions with structures analogous to the FTC.  These enactments reflect the widespread understanding that under *Humphrey's Executor*, "removal restrictions have been generally regarded as lawful for so-called

'independent regulatory agencies,' such as the Federal Trade Commission, the Interstate Commerce Commission, and the Consumer Product Safety Commission." *Morrison*, 487 U.S. at 724-25 (Scalia, J., dissenting) (citations omitted); *see also Buckley*, 424 U.S. at 136 (describing *Humphrey's Executor* as having held "that Congress could circumscribe the President's power to remove members of independent regulatory agencies"); *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 537 F.3d 667, 695 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) ("*Humphrey's Executor* . . . blessed Congress's creation of the so-called 'independent' agencies" and the agencies "commonly understood" to be protected by that decision "include, among many others, the CFTC, the FCC, the Federal Reserve, the FTC, FERC, the NLRB, and the SEC"). Substantive removal restrictions have also been understood to be constitutional under *Humphrey's Executor* for multimember Executive tribunals such as the Tax Court, *Freytag*, 501 U.S. at 920 (Scalia, J., concurring), the Court of Appeals for the Armed Forces, *Morrison*, 487 U.S. at 725 (Scalia, J., dissenting), and the War Claims Commission, *Wiener v. United States*, 357 U.S. 349 (1958).

The Supreme Court has not disturbed *Humphrey's Executor* or its application to these varied entities across the federal government. Instead,

the Supreme Court has made clear that it has had no occasion to
"reexamine any of" its removal precedents, including *Humphrey's
Executor*. *Free Enterprise Fund v. Public Company Accounting Oversight
Board*, 561 U.S. 477, 483 (2010). Indeed, the *Free Enterprise* Court
decided the case on the explicit understanding that the SEC—which
undoubtedly exercises substantial executive power—had removal
restrictions under *Humphrey's Executor*. *Id.* at 487. The Court invalidated
removal restrictions for certain inferior officers appointed by the SEC, but
did not invalidate any protections for the SEC Commissioners. *Id.* at 508-
09. By leaving intact the SEC's "single level of good-cause tenure," *id.* at
509, the Court ensured that the securities laws would be "enforced only by a
constitutional agency accountable to the Executive," *id.* at 513.

Likewise in *Seila Law*, the Supreme Court invalidated the removal
restrictions for the CFPB's single Director, while noting that the CFPB had
initially been designed to operate as "a traditional independent agency, run
by a multimember board" and "modeled after the multimember Consumer
Product Safety Commission." *Seila Law*, 140 S. Ct. at 2192. In severing the
Director's removal restriction, a majority of the Court explained that the
constitutional holding did "not foreclose Congress from pursuing
alternative responses to the problem—for example, by converting the CFPB

into a multimember agency." *Id.* at 2211 (opinion of Roberts, C.J., joined by Alito and Kavanaugh, JJ.); *see id.* at 2245 (Kagan, J., joined by Ginsburg, Breyer, and Sotomayor, JJ., concurring in the judgment with respect to severability and dissenting in part).

*Collins v. Yellen*, 141 S. Ct. 1761 (2021), which applied *Seila Law* to invalidate the removal protection of the single head of the Federal Housing Finance Agency is of even less help to plaintiffs. *Collins* underscored that *Seila Law* "did 'not revisit our prior decisions allowing certain limitations on the President's removal power'" and described *Seila Law*'s holding as having been focused on the fact that the CFPB employed the novel structure of being headed by a single Director. *Id.* at 1783-84. And in direct contravention of plaintiffs' submission here that removal protections are categorically unavailable for the heads of agencies that exercise substantial executive power, *Collins* explained that "the nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's power to remove its head." *Id.* at 1784.

Plaintiffs emphasize a sentence in *Seila Law* that describes *Humphrey's Executor* as having involved an agency that "was said not to exercise any executive power." *Seila Law*, 140 S. Ct. at 2199. But if plaintiffs were correct that the exercise of substantial executive authority is

dispositive and precludes removal protections, *Humphrey's Executor* would have been wrong on its own facts the day it was decided. *See supra* pp. 10-11. Moreover, *Seila Law* would have had no occasion to repeatedly emphasize the novelty of CFPB's "single Director," *id.* at 2191, 2192, 2193, 2194, 2200, 2201, 2204—the CFPB's exercise of executive authority alone would have been sufficient to place the agency beyond *Humphrey's Executor*. Nor would *Collins* have disclaimed courts' ability "to weigh the relative importance of the regulatory and enforcement authority of disparate agencies" and held that "the constitutionality of removal restrictions" does not "hinge[] on such an inquiry." 141 S. Ct. at 1785.[1]

The flaws in plaintiffs' position are underscored by this Court's recent unanimous decision in *Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023), which declined to invalidate the removal restrictions of the very FTC Commissioners whose removal protections were upheld in *Humphrey's*

---

[1] Plaintiffs assert (at 3) that the panel decision conflicts with *Myers v. United States*, 272 U.S. 52 (1926), but fail to elaborate on that assertion, acknowledging that any conflict comes from applying *Humphrey's Executor* itself. Plaintiffs also erroneously assert—for their first time in their en banc petition—that the Commission suffers from several additional constitutional infirmities. Pet. 8-13. Plaintiffs vaguely gestured to some of these in their merits briefs' statement of the case (pages 8-9) and jurisdictional arguments (pages 49-50), but plaintiffs never developed any argument that *Humphrey's Executor* did not apply based on these concerns. Pet. 8.

*Executor*.  The *Illumina* challenger argued that as a result of post-1935 expansions of the FTC's powers, that agency now exercises substantial executive authority, rendering the removal protections invalid under *Seila Law*.  This Court disagreed, properly concluding that "although the FTC's powers may have changed since *Humphrey's Executor* was decided," that decision remains dispositive of the FTC's status unless and until the Supreme Court holds otherwise.  *Id*. at 1046-47.  Yet, plaintiffs would have this Court conclude that *Humphrey's Executor* fails to protect the CPSC, even though its structure and powers are closely analogous to those of the modern FTC.  Plaintiffs barely acknowledge *Illumina* and make no effort to engage with that opinion.

At bottom, plaintiffs fail to establish that *Seila Law* established a new categorical test that renders unconstitutional some two-dozen multimember independent agencies *sub silentio*.  Because the Supreme Court has merely declined to extend *Humphrey's Executor*, and has never pared it back, the question before this Court is whether the CPSC conforms to the traditional independent agency model approved in that decision. The panel correctly concluded that it does.

**B.**  The majority appropriately respected its "role in the judicial architecture," Panel Op. 14, and held that "[o]nly the Supreme Court has

power to reconsider" *Humphrey's Executor*, *id.* at 22.  Judge Jones likewise recognized that the "Supreme Court has created uncertainty that only it can ultimately alleviate."  *Id.* at 23 (Jones, J., concurring in part and dissenting in part).  Both observations are correct.  Whether to overrule *Humphrey's Executor* or abrogate it for virtually *every* federal multimember agency is the Supreme Court's prerogative.  *See Illumina,* 88 F.4th at 1047 (explaining that the question of whether "*Humphrey's Executor* [is] no longer binding is for the Supreme Court, not [this Court], to answer").

The Supreme Court has long emphasized that its "decisions remain binding precedent until [the Court] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."  *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam).  This Court has thus admonished that while the Supreme Court "might well decide—perhaps soon—to reexamine" its precedents, this Court is "not supposed to . . . read tea leaves to predict where it might end up."  *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 447 (5th Cir. 2020).

Adhering to that precept, this Court properly declined to entertain a constitutional challenge to the male-only draft.  *See National Coalition for Men v. Selective Service System*, 969 F.3d 546 (5th Cir. 2020).  The Supreme Court had previously upheld the male-only draft and "based its

17

reasoning on the fact that women were then barred from serving in combat." *Id.* at 548. When that factual predicate changed, a district court declared that the Supreme Court's previous decision "no longer controlled" and thus that the male-only draft was unconstitutional. *Id.* This Court reversed, explaining that "[t]he Fifth Circuit is a strict stare decisis court and cannot ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Id.* at 549 (quotation marks omitted). "[E]ven where subsequent decisions or factual developments may appear to have significantly undermined the rationale for the earlier holding," those circumstances "do[] not grant a court of appeals license to disregard or overrule that precedent." *Id.* at 549-50 (cleaned up).[2]

That respect for stare decisis dictates the same result here. As then-Judge Kavanaugh recognized, "*Humphrey's Executor* is an entrenched Supreme Court precedent, protected by stare decisis," which applies to

---

[2] Even if the en banc Court were otherwise inclined to consider the question raised in the petition, this would be a poor vehicle for doing so. Plaintiffs are not regulated by the Commission. They are FOIA requesters who were provided all non-exempt documents responsive to the requests identified in the complaint, and they were not assessed any fees for those requests. And the case's current posture—on appeal from a partial final judgment that resolved only the bare legal question of whether the Commissioners' removal protections are constitutional—provides a questionable setting for adjudicating structural constitutional questions. *But see* Panel Op. 7-13.

traditional multimember agencies.  *In re Aiken County*, 645 F.3d 428, 446 (D.C. Cir. 2011) (Kavanaugh, J., concurring).  En banc review is unwarranted where the panel faithfully and correctly applied that precedent and left the decision of whether to revisit *Humphrey's Executor* to the Supreme Court.

## CONCLUSION

The petition should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK R. FREEMAN
MARK B. STERN
JOSHUA M. SALZMAN
*/s/ Daniel Aguilar*
DANIEL AGUILAR
ANNA M. STAPLETON
  Attorneys, Appellate Staff
  Civil Division, Room 7266
  U.S. Department of Justice
  950 Pennsylvania Ave., NW
  Washington, DC  20530
  (202) 514-5432

February 20, 2024

# CERTIFICATIONS

I certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font. I certify that this brief complies with the word limits of Federal Rule of Appellate Procedure 35(b)(2) because it contains 3,835 words by the count of Microsoft Word 2016.

I certify that on February 20, 2024, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Daniel Aguilar*
Daniel Aguilar