# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2024

Lyle W. Cayce
Clerk

---

No. 22-40328

---

CONSUMERS' RESEARCH; BY TWO, L.P.,

*Plaintiffs—Appellees,*

*versus*

CONSUMER PRODUCT SAFETY COMMISSION,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:21-CV-256

---

ON PETITION FOR REHEARING EN BANC

Before JONES, DENNIS, and WILLETT, *Circuit Judges.*

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel rehearing (5TH CIR. R. 35 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (FED. R. APP. P. 35 and 5TH CIR. R. 35).

In the en banc poll, eight judges voted in favor of rehearing (Jones, Smith, Elrod, Ho, Duncan, Engelhardt, Oldham, and Wilson), and nine voted against rehearing (Richman, Stewart, Southwick, Haynes, Graves, Higginson, Willett, Douglas, and Ramirez).

DON R. WILLETT, *Circuit Judge*, concurring in the denial of rehearing en banc:

Our Founding generation was fixated on splitting up power—so much so that that our Constitution enshrines a belt-and-suspenders approach, allocating federal power not just *among* branches but also *within* branches. This seismic case highlights a tension wrought by this dual-division design. And, like most constitutional disputes, it tees up the fateful "who decides?" question.

Using friction to combat faction, our Constitution, the oldest written national constitution on Earth,[1] splits federal power horizontally: "Madisonian architecture infused with Newtonian genius—three separate branches locked in synchronous orbit by competing interests."[2] And with federal *judicial* power, the Framers went a step further, marrying *inter*-branch division with *intra*-branch division. This case ostensibly is about Article II, which vests executive power in "a President of the United States of America."[3] But this case decisionally is about Article III, which vests "judicial Power" in "one supreme Court" and then downward to "such inferior courts as the Congress may from time to time ordain and establish."[4]

Lower-court judges must honor both structural dictates, of course. We must restrain the unconstitutional dilution of executive power on the one hand and respect the decisions of the Supreme Court on the other. But what if these power-dividing dictates collide? As "middle-management circuit

---

[1] *Fun Facts*, NATIONAL CONSTITUTION CENTER, available at https://constitutioncenter.org/media/files/funfacts.pdf.

[2] *Collins v. Mnuchin*, 938 F.3d 553, 562 (5th Cir. 2019) (en banc).

[3] U.S. CONST. art. II, § 1, cl. 1.

[4] U.S. CONST. art. III, § 1.

judges,"[5] our paramount loyalty is to the Constitution—more precisely, to the Constitution as the Supreme Court interprets it.[6] The New Deal-era precedent that lets Congress restrict the President's ability to remove members of multiheaded agencies, what we now shorthand as *Humphrey's Executor*,[7] is still on the books. Indeed, the Supreme Court has twice declined to overrule it, going out of its way to declare—recently and conspicuously— that it would "not revisit" the decision but leave it "in place."[8]

I believe we must follow suit, even if we think *Humphrey's Executor* was wrongly decided as an original matter and even if we think it is "out of step with prevailing Supreme Court sentiment."[9] That vertical limitation on our judicial power, compelled by the structure of Article III and the doctrine of stare decisis, means we are not at liberty to get ahead of our skis and precipitately shrink a Supreme Court decision's precedential scope.[10]

Thus, when we are confronted with a constitutional challenge against an agency (the CPSC) that everyone agrees is structurally identical to the one in *Humphrey's Executor* (the FTC), we cannot break new constitutional

---

[5] *Consumers' Rsch. v. Consumer Product Safety Comm'n*, 91 F.4th 342, 346 (5th Cir. 2024).

[6] *Cf. post*, at 11 (OLDHAM, J., dissenting) ("[T]he panel majority could not really reconcile the Commission's structure with the Constitution as interpreted by the Supreme Court.").

[7] 295 U.S. 602 (1935).

[8] *Seila L. LLC v. Consumer Fin. Protection Bur.*, 140 S. Ct. 2183, 2206 (2020); *Free Enter. Fund v. Public Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010).

[9] *Consumers' Rsch.*, 91 F.4th at 356.

[10] Nor can we, by the same token, "distort," "stretch," or "halfheartedly invoke" precedent. *Post*, at 11 (OLDHAM, J., dissenting). Fortunately, none of us is doing any of those things. What may be manifesting instead is a reasonable, good-faith disagreement on how to apply nearly, *nearly*, zombified precedent.

ground.[11] Granted, a *lot* has changed since that 1935 decision. We no longer indulge the fiction that the FTC wields merely quasi-legislative and quasi-judicial power.[12] And we can forthrightly acknowledge that the FTC of today wields vastly more *executive* power than it did when the Supreme Court first considered its constitutionality during FDR's first term.[13] But, as our court declared barely four months ago, "whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer."[14] Our judicial task, then, does not suddenly change once we have a structurally identical agency with a different name almost a century later.[15] *Humphrey's Executor* has been overtaken, but it has not been overturned—not yet at least.[16]

JUDGE OLDHAM's scholarly dissent expresses eminently reasonable disagreement, and as with the arguments made by the challengers, I find myself mostly nodding in agreement. Our narrow disagreement, it seems, distills to one issue: how to read the Supreme Court's 2020 decision

[11] *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("The law of precedent teaches that like cases should generally be treated alike.")

[12] *Seila Law*, 140 S. Ct. at 2198 n.2 ("The Court's conclusion that the FTC did not exercise executive power has not withstood the test of time.").

[13] *Id.* at 2218 (THOMAS, J., concurring in part) ("*Humphrey's Executor* does not even satisfy its own exception."); *see also Consumers' Rsch.*, 91 F.4th at 357 (JONES, J., dissenting) ("No doubt the FTC has evolved significantly over time.").

[14] *Illumina v. Fed. Trade Comm'n*, 88 F.4th 1036, 1047 (5th Cir. 2023).

[15] *See Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

[16] *See Seila Law*, 140 S. Ct. at 2211–12 (THOMAS, J., concurring in part) ("The Court concludes that it is not strictly necessary for us to overrule that decision. But with today's decision, the Court has repudiated almost every aspect of Humphrey's Executor.").

in *Seila Law*. As I explained at greater length in the panel opinion, *Seila Law* does not change the calculus here, because even though the CPSC can be said to exercise substantial executive power, its structure is not historically unprecedented, and, crucially, it does not have the defining single-director feature that the Supreme Court so emphatically emphasized in distinguishing *Humphrey's Executor*.[17] Indeed, as we recently held en banc, it is only when these mechanisms combine to "excessively insulate" the independent agency from presidential control that we have a separation-of-powers problem.[18]

I write, however, not to rehash what was already written in the panel opinion. As its author, I think it speaks for itself. I write only to say this: Despite today's en banc denial, the panel opinion need not be the last word. Our "strange conclusion," as I have said, "follows, respectfully, from the Supreme Court's removal doctrine, not from our application of it."[19] And though I disagreed with JUDGE JONES when we heard this case as a panel, I agree completely with her overarching point: "The Supreme Court has created uncertainty that only it can ultimately alleviate."[20]

Until then, we must apply precedent dutifully—but we need not do so quietly. Count me among those skeptical of *Humphrey's Executor*, which

---

[17] *Seila Law*, 140 S. Ct. at 2201 ("Perhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." (alterations adopted) (citation omitted)); *id.* at 2192 ("While we need not and do not revisit our prior decisions in allowing certain limitations on the President's removal power, there are compelling reasons not to extend those precedents to the novel context of an independent agency led by a single Director.").

[18] *Collins v. Mnuchin*, 896 F.3d 640, 666–67 (5th Cir. 2018), *as reinstated by Collins v. Mnuchin*, 938 F.3d 553, 587 (5th Cir. 2019) (en banc), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 141 S. Ct. 1761 (2021).

[19] *Consumers' Rsch.*, 91 F.4th at 355.

[20] *Id.* at 356 (JONES, J., dissenting).

seems nigh impossible to square with the Supreme Court's current separation-of-powers sentiment. Even so, sentiment is not precedent. And while an en banc petition cannot push reset on *Humphrey's Executor*, a certiorari petition can.

And this cert petition writes itself.

JAMES C. HO, *Circuit Judge*, dissenting from denial of rehearing en banc:

I agree with my dissenting colleagues that "[t]he Constitution vests the President with the power to remove *principal executive officers*." *Post*, at _ (emphasis added). Accordingly, I join my colleagues in concluding that any statutory provision that restricts the President's power to remove principal executive officers is unconstitutional under Article II.

I write separately to briefly reprise a previous observation I've made about Executive Branch employees more broadly. Under current statutory law, "[o]nly a tiny percentage of Executive Branch employees are subject to Presidential removal. The overwhelming majority of federal employees, by contrast, are protected against Presidential removal by civil service laws." *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 390 (5th Cir. 2023) (en banc) (Ho, J., concurring). So "the President actually controls surprisingly little of the Executive Branch." *Id.* "[W]e should consider whether laws that limit the President's power to remove Executive Branch employees are consistent with the vesting of executive power exclusively in the President." *Id.* at 391.

There is no accountability to the people when so much of our government is so deeply insulated from those we elect. Restoring our democracy requires regaining control of the bureaucracy. "The right to vote means nothing if we . . . allow the real work of lawmaking to be exercised by . . . agency bureaucrats, rather than by elected officials accountable to the American voter." *Texas v. Rettig*, 993 F.3d 408, 410–11 (5th Cir. 2021) (Ho, J., dissenting from denial of rehearing en banc) (citing PHILIP HAMBURGER, IS ADMINISTRATIVE LAW UNLAWFUL? 369, 374–75 (2014)). And we elect the leadership of the Executive Branch for the exact same reason—to ensure accountability to the American voter.

Because the court today declines to take even this modest step to restore democratic accountability to our federal bureaucracy, I must dissent.

Andrew S. Oldham, *Circuit Judge*, joined by Jones, Smith, Elrod, Ho, Duncan, Engelhardt, and Wilson, *Circuit Judges*, dissenting from the denial of rehearing en banc:

The Constitution vests the President with the power to remove principal executive officers. The Supreme Court has explained Congress may restrict that power *only* for "multimember expert agencies that do not wield substantial executive power." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2199 (2020). A divided panel of this court found the principal officers in charge of the Consumer Product Safety Commission wield "substantial" executive power, but it nevertheless held Congress may grant those officers for-cause removal protections. *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 353, 356 (5th Cir. 2024). The panel majority justified its holding by explaining inferior courts have no authority to "adjust [the] borders" of Supreme Court precedent. *Id.* at 352. I agree with that premise. But respectfully, it demonstrates the panel majority's error. The Supreme Court's precedents make clear the Commission's statutory for-cause removal protections violate the Constitution, so I would grant the petition for rehearing en banc.

## I.

"Under our Constitution, the 'executive Power'—all of it—is 'vested in a President.'" *Seila L.*, 140 S. Ct. at 2191 (quoting U.S. Const. art. II, cl. 1). At the founding, the executive Power was understood to encompass the power to remove executive officers, which means the Constitution vested the President with the power of removal. Aditya Bamzai & Saikrishna Bangalore Prakash, *The Executive Power of Removal*, 136 Harv. L. Rev. 1756, 1763–82 (2023). And because the Constitution nowhere grants Congress the authority to strip that power from the President, the President's removal power was originally understood to be nondefeasible. *Id.* at 1789; *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477,

483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep [his] officers accountable—by removing them from office, if necessary.").

That makes sense. No single person could run the executive branch alone, so "the Framers expected that the President would rely on subordinate officers for assistance." *Seila L.*, 140 S. Ct. 2191. While those officers may assist the President in carrying out his constitutionally assigned duties, it remains "*his* responsibility to take care that the laws be faithfully executed." *Free Enter. Fund*, 561 U.S. at 493 (emphasis in original). As the Supreme Court has explained, "the buck stops with the President." *Ibid.* But if the President lacked the power to remove his subordinates, he "could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 502. Indeed, Congress could "transform the executive branch into a perpetual and unaccountable bureaucratic machine." Bamzai & Prakash, *The Executive Power of Removal*, *supra* at 1762.

So the Supreme Court has long "recognized the President's prerogative to remove executive officials." *Seila L.*, 140 S. Ct. at 2197. In *Myers v. United States*, the Court held the Constitution vests the President with the exclusive power to remove the postmaster general. 272 U.S. 52, 176 (1925). The reason, the Court explained, is that "Article II 'grants to the President' the 'general administrative control of those executing the laws, including the power of appointment *and removal* of executive officers.'" *Seila L.*, 140 S. Ct. at 2197 (emphasis in original) (quoting *Myers*, 272 U.S. at 163–164). Then, in *Free Enterprise Fund*, the Court held Congress could not insulate an executive branch official with two layers of for-cause removal protection. 561 U.S. at 483. In doing so, the Court "reiterated the President's [] removal power" as articulated in *Myers*. *Seila L.*, 140 S. Ct. at 2198. Thus, there is no doubt as to "the general rule that the President possesses 'the

authority to remove those who assist him in carrying out his duties.'" *Ibid.* (quoting *Free Enterprise Fund*, 561 U.S. at 513–14).

In *Seila Law*, the Supreme Court explained it has recognized just two exceptions to the general rule established in *Myers. See id.* at 2199–00. First, Congress may restrict the President's power to remove *inferior* officers so long as the restrictions do not "impede the President's ability to perform his constitutional duty." *Morrison v. Olson*, 487 U.S. 654, 691 (1988). Second, Congress may restrict the President's power to remove members of a "multimember expert agenc[y] that do[es] not wield substantial executive power." *Seila L.*, 140 S. Ct. at 2199–200; *see Humphrey's Executor v. United States*, 295 U.S. 602 (1935).

"These two exceptions"—the *Morrison* exception and the *Humphrey's* exception—"represent what up to now have been the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila L.*, 140 S. Ct. at 2199–00. And in light of the compelling historical and structural evidence that the President's removal power was originally understood to be unrestrictable, the Court has twice declined to extend either exception to any "new situation." *Seila L.*, 140 S. Ct. at 2201 (quoting *Free Enterprise Fund*, 561 U.S. at 483). The upshot is that the exceptions are not to be extended—a statutory restriction on the President's power to remove an executive branch officer is constitutional only if it is encompassed by either the *Morrison* exception or the *Humphrey's* exception. *See id.* at 2200–01.

## II.

Consumers' Research and By Two sued the Consumer Product Safety Commission ("the Commission"). They claim the Commission's structure is unconstitutional because the President may remove the Commission's

members only "for neglect of duty or malfeasance in office but for no other cause." 15 U.S.C. § 2053(a).

The plaintiffs are correct. Congress through § 2053(a) clearly purported to restrict the President's removal power. And neither of the recognized exceptions to that otherwise unrestrictable power applies. The *Morrison* exception is plainly irrelevant because the Commissioners report to none but the President. They are accordingly principal, not inferior, officers. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1980 (2021) ("'Whether one is an "inferior" officer depends on whether he has a superior' other than the President.") (quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997)).

The *Humphrey's* exception is similarly inapposite. That is because— as the panel majority recognized—"the Commission exercises substantial executive power." *Consumers' Rsch.*, 91 F.4th at 354. The Commission's power is executive because that is the only kind of power an agency (like the Commission) can exercise under our Constitution. *See City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013) ("[U]nder our constitutional structure [agency actions] must be exercises of [] the 'executive Power.'" (citation omitted)); *Seila L.*, 140 S. Ct. at 2216 (same); *Morrison*, 487 U.S. at 690 n.28 (similar). That proposition is so obvious that the government does not even contest it. ROA.634.

The Commission's power is also substantial. The Supreme Court has never devised a test for substantiality, but it has laid down some markers. For example, in *Seila Law* the Court described the Consumer Financial Protection Bureau as "vested with significant executive power." 140 S. Ct. at 2201.[1] It did so because the CFPB "dictate[s] and enforce[s] policy for a

---

[1] The panel majority emphasized that the Court described the CFPB's power as "significant" while describing the *Humphrey's* exception as limited to agencies whose power is "substantial." *Consumers' Rsch.*, 91 F.4th at 353. But significant and substantial

vital segment of the economy affecting millions of Americans." *Id.* at 2204. And the CFPB has potent tools to pursue its objectives: broad discretion to make rules, sweeping investigatory and enforcement powers, and extensive adjudicatory authority. *Id.* at 2193.

All that is true of the Commission. Like the CFPB, the Commission "dictate[s] and enforce[s] policy for a vital segment of the economy affecting millions of Americans." *Seila L.*, 140 S. Ct. at 2204. In fact, it has jurisdiction over "more than $1.6 trillion in consumer products sold each year." Consumer Product Safety Commission, *Strategic Plan 2023-2026* at 1, https://perma.cc/64FK-J5CM (last accessed February 26, 2024). And like the CFPB, the Commission has potent tools:

- The Commission has broad rulemaking discretion. It has near-unconstrained power to "promulgate consumer product safety standards." 15 U.S.C. § 2056(a); *see Finnbin, LLC v. CPSC*, 45 F.4th 127, 134 (D.C. Cir. 2022). It may even "ban[]" products outright when it deems them "hazardous." 15 U.S.C. § 2057. And its pronouncements have the force of law. *See id.* § 2068(a)(1) ("It shall be unlawful for any person to sell, offer for sale, manufacture for sale, distribute in commerce, or import . . . any consumer product, or other product or substance" regulated by the Commission "that is not in conformity with" the Commission's "consumer product safety . . . rule[s], regulation[s], standard[s], or ban[s].").

- The Commission has sweeping investigatory and enforcement powers. It may inspect "any factory, warehouse, or establishment in which consumer products are manufactured or held." 15 U.S.C.

---

are synonyms, so there is no reason to presume the Court's terminological variation is significant (or substantial). *See Substantial*, Merriam-Webster Thesaurus (online ed.).

§ 2065(a). It may define recordkeeping requirements. *Id.* § 2065(b). It may inspect the records of companies subject to its jurisdiction on demand. *Ibid.* It may condition the sale of any consumer product in the United States on compliance with its inspection and recordkeeping requirements. *See id.* § 2065(d). And most importantly, it may file enforcement suits in federal court seeking injunctive relief, *id.* § 2071(a), and civil penalties of up to $100,000 per violation, with a cap at $15 million for a "related series of violations," *id.* §§ 2069(a)-(b), 2076(b)(7)(A).

- The Commission has adjudicatory authority. It may conduct a hearing to determine whether a product distributed in commerce presents a hazard, after which it may order a manufacturer, distributor, or retailer to (among other things) cease distribution of a product. *Id.* § 2064(c).

It thus appears Congress vested the Commission with power that is analogous to the CFPB's. It stands to reason that if the CFPB's power is substantial, the Commission's is too. The panel majority acknowledged as much. *See Consumers' Rsch.*, 91 F.4th at 353 ("[T]he Commission's power is substantial."). That means the Commission's power is both executive and substantial, which means the Commission is not encompassed by the *Humphrey's* exception to the President's general power of removal. *See Seila L.*, 140 S. Ct. at 2000 (explaining the *Humphrey's* exception applies only to "multimember expert agencies that *do not wield substantial executive power*") (emphasis added). There is no other exception for the Commission's removal protections to shelter under, so those protections violate Article II of the Constitution.

### III.

The panel majority accepted the argument that the Commission's removal protections violate Article II as "free from any logical error." *Consumers' Rsch.*, 91 F.4th at 355. So instead of quibbling over deduction, the panel majority instead contended the argument proceeds from a mistaken premise.[2] In the panel majority's view, the *Humphrey's* exception applies to more than just "multimember expert agencies that do not wield substantial executive power." *Seila L.*, 140 S. Ct. at 2199. It applies to "any traditional independent agency headed by a multimember board." *Consumers' Rsch.*, 91 F.4th at 352 (citation and internal quotation marks omitted).

The problem with the panel majority's argument is that the *Humphrey's* exception simply does not sweep in all traditional independent agencies headed by multimember boards. That is for the obvious reason that the Supreme Court said it does not less than four years ago. *See Seila L.*, 140 S. Ct. at 2199 (explaining the *Humphrey's* exception applies only "to multimember expert agencies that do not wield substantial executive power"); *see also id.* at 2211 (Thomas, J., concurring in part and dissenting in part) ("Because the Court takes a step in the right direction by limiting *Humphrey's Executor* to multimember expert agencies that *do not wield substantial executive power*, I join Parts I, II, and III of its opinion." (emphasis in original) (internal citation and quotation marks omitted)).

The panel majority resisted this conclusion on three grounds, but none is persuasive. First, the panel majority asserted the Court in *Seila Law* did not mean what it said about the narrowness of the *Humphrey's* exception. To prove it, the panel majority plucked an irrelevant clause from the facts

---

[2] The panel majority did so even as it admitted the argument does "not rely on any single premise that [it could] confidently label faulty." *Id.* at 352.

section and presented it as evidence that the Court actually thinks the *Humphrey's* exception is quite broad. *Consumers' Rsch.*, 91 F.4th at 352 ("[S]o far as we can tell, the exception still protects any 'traditional independent agency headed by a multimember board.'") (quoting *Seila L.*, 140 S. Ct. at 2193). But in context, the clause supplies no support for the panel majority's position because it is not part of a legally significant statement. It is a mere description of the way Congress designed the CFPB. *See Seila L.*, 140 S. Ct. at 2193 ("Congress's design for the CFPB differed from the proposals of Professor Warren and the Obama administration in one critical respect. Rather than create a traditional independent agency headed by a multimember board or commission, Congress elected to place the CFPB under the leadership of a single Director."). An argument that depends on mischaracterized dicta is not a very compelling argument.

Second, the panel majority noted that the Court in *Seila Law* did not "revisit *Humphrey's Executor* or any other precedent." *Consumers' Rsch.*, 91 F.4th at 352 (quoting *Seila L.*, 140 S. Ct. at 2198). And the panel majority asserted (without support) that *Humphrey's Executor* held Congress may restrict the President's power to remove the members of any traditional independent agency headed by a multimember board. In the panel majority's view, anything the Supreme Court might have said about *Humphrey's Executor* in *Seila Law* is accordingly irrelevant; *Humphrey's Executor* binds this court because the Supreme Court has not (yet) overruled or narrowed it. *Consumers' Rsch.*, 91 F.4th at 356.

But it is entirely beside the point that *Humphrey's Executor* is still on the books because the holding of that case is nowhere near as broad as the panel majority claimed. *Humphrey's Executor* made no generalizations about independent agencies. Rather, the Court explained its holding "depend[ed] upon the character" of the 1935 FTC—especially on the fact that the FTC was a "quasi legislative and quasi judicial bod[y]" that exercised executive

power only "in the discharge and effectuation of its quasi legislative or quasi judicial powers, or as an agency of the legislative or judicial departments of the government." *Id.* at 628, 630. And to be doubly clear about the limited nature of its decision, the Court explained:

> To the extent that, between the decision in the *Myers* Case, which sustains the unrestrictable power of the President to remove purely executive officers, and our present decision that such power does not extend to an office such as that here involved, there shall remain a field of doubt, we leave such cases as may fall within it for future consideration and determination as they may arise.

*Id.* at 632. In other words, the Court did not take a position on the question of whether Congress could restrict the President's authority to remove executive branch officers that wield more executive power than the 1935 FTC. That is why the Supreme Court in *Seila Law* summarized the holding of *Humphrey's Executor* like this: "*Humphrey's Executor* permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and *was said not to exercise any executive power.*" *Seila L.*, 140 S. Ct. at 2199 (emphasis added).

Rightly understood, the fact-bound holding of *Humphrey's Executor* does not encompass the Commission's removal protections. Most obviously, that is because the Commission has "the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court—a quintessentially executive power not considered in *Humphrey's Executor.*" *Seila L.*, 140 S. Ct. at 2200. So *Humphrey's Executor* does not "settle" this case. *Consumers' Rsch.*, 91 F.4th at 356. In holding otherwise, the panel majority apparently misread the Court's opinion. Worse, it ignored the Court's very recent explanation of what was actually decided in that case.

Third, the panel majority explained that if it was not bound by *Humphrey's Executor*, it was nonetheless bound by our decision in *Collins v. Mnuchin*. *See Consumers' Rsch.*, 91 F.4th at 355 (citing *Collins*, 896 F.3d 640, 645 (5th Cir. 2018), *as reinstated by Collins v. Mnuchin*, 938 F.3d 553, 588 (5th Cir. 2019) (en banc), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 141 S. Ct. 1761 (2021)). There, we held that for-cause removal protection alone is "not sufficient to trigger a separation-of-powers violation." *Id.* at 667. Rather, we explained that "for-cause removal violates the constitution only when it combines with other independence-promoting mechanisms that work together to excessively insulate an agency from the President's control." *Consumers' Rsch.*, 91 F.4th at 355 (quotation omitted) (quoting *Collins*, 896 F.3d at 666–67).

But *Collins* is irrelevant because the framework it established was unequivocally undermined by *Seila Law*. As explained above, the Supreme Court in that case made clear the general rule is that the President has "unrestrictable power . . . to remove [] executive officers." *Myers*, 295 U.S. at 632. There are just two exceptions—the *Morrison* exception and the *Humphrey's* exception. Neither exception licenses inferior courts to bless restrictions on the President's removal power based on their own freewheeling assessment of an agency's insulation from presidential control.[3] So to the extent the panel majority deemed the Commissions' removal protections constitutional based on the Commission's lack of "independence-promoting mechanisms," *Consumers' Rsch.* 91 F.4th at 355 (quoting *Collins*, 896 F.3d at 667), the panel majority contravened *Myers*.

---

[3] If *Collins* somehow precluded the panel majority from giving effect to the Supreme Court's decision in *Seila Law*, that is all the more reason to grant the petition for rehearing en banc.

In sum, the panel majority could not really reconcile the Commission's structure with the Constitution as interpreted by the Supreme Court. But it apparently could not believe the Court meant what it said just four years ago. So the panel majority distorted *Seila Law*, then stretched the holding of *Humphrey's Executor*, then halfheartedly invoked an irrelevant decision of this court, all to protect the Commissioners from the President's constitutional power to remove them from office.

IV.

Even if the panel majority correctly interpreted the Supreme Court's precedents, it was still wrong in this case. The panel majority distilled from the Court's precedents that for-cause removal protections are constitutional for "any *traditional* independent agency headed by a multimember board." *Consumers' Rsch.*, 91 F.4th at 352 (emphasis added; citation and quotation omitted). That means on the panel majority's telling, for-cause removal protections for agency heads are constitutional only if two things are true: First, the agency is run by a multimember body. Second, the agency is "traditional."

The panel majority said virtually nothing about the second prong of the test it distilled from the Supreme Court's precedents—that the agency be traditional. In fact, it appears the panel majority assumed an agency is traditional if it is multimember. *See id.* at 354 ("[T]he Commission has history on its side. It is a prototypical traditional independent agency, run by a multimember board." (quotation omitted)). But if that is true, the requirement that an agency be traditional is entirely superfluous. It would do just as well to say for-cause removal protections are constitutional for all multimember independent agencies. And that would prove too much because the Court in *Seila Law* made clear the removal inquiry is more nuanced than that. *See* 140 S. Ct. at 2200 (explaining the CFPB's removal protections are

unconstitutional for two independent reasons: the CFPB is headed by a single director, and the CFPB is "hardly a mere legislative or judicial aid"). So to the extent the panel majority's test has support in Supreme Court precedent, the "traditional" prong must do some work.

The Supreme Court has never explained what makes an agency traditional—perhaps because its recent removal jurisprudence has focused on the substantiality of an agency's power rather than its historical pedigree. *See* Part I, *supra*. But in evaluating the traditional-ness of an agency, one might reasonably start by comparing it with pioneering agencies like the Federal Trade Commission (at issue in *Humphrey's Executor*) and the Federal Reserve.

The FTC and the Fed are "traditional" in the sense that they are longstanding; both predate the New Deal by decades. *See* Federal Trade Commission, *Our History*, https://perma.cc/2UTF-7AA7 (Federal Trade Commission created in 1914); Board of Governors of the Federal Reserve System, *Federal Reserve Act*, https://perma.cc/LQ6T-8P3E (Federal Reserve System created in 1913). Moreover, the FTC is traditional in the sense that the Supreme Court has held its structure is constitutional. *See Humphrey's Executor*, 295 U.S. 602. And the Fed is traditional in the sense that it looks like the kind of "administrative body" described by the *Humphrey's Executor* Court. 295 U.S. at 628. That is because the Fed's most important responsibility is administration of the money supply. *See* 12 U.S.C. § 225a. And unlike law enforcement, administration of the money supply is not an executive function—so the Fed's independence does not offend the traditional principle that all executive power is vested in the President. *See Morrison v. Olson*, 487 U.S. 654, 691 (1988) (noting "law enforcement functions" are traditionally executive).

The Commission shares none of these characteristics. First, it does not predate the New Deal. It was created in 1972, more than half a century after the FTC and the Fed. CONSUMER PRODUCT SAFETY COMMISSION, *Who We Are – What We Do for You*, https://perma.cc/A3JZ-UPWU. Second, the Supreme Court has never held that the Commission's structure is constitutional. Third, the Commission's principal responsibility is to enforce consumer protection laws, which is (obviously) a law enforcement function. And the Commission has powers even the *Humphrey's Executor* Court would have considered executive— namely "the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court." *Seila L.*, 140 S. Ct. at 2200; *see* 15 U.S.C. § 2069(a)-(b), *id.* § 2076(b)(7)(A). It thus appears the Commission is not "traditional," which means it fails to satisfy even the contrived test the panel majority distills from the Supreme Court's removal cases.

\* \* \*

The panel majority was doubtless correct that inferior courts must follow binding Supreme Court precedent. *See, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents."). But that truism accomplishes little because all agree that we're bound by *Humphrey's Executor*, *Myers*, *Seila Law*, &c. The dispute is how those binding authorities apply to this case. In my view, the Court's precedents say the President has unrestrictable power to remove principal officers unless those officers are part of a traditional multimember expert agency that does not wield substantial executive power. That means the Commission's removal protections are unconstitutional. And even if I am wrong—even if the Court's precedents mean what the panel majority said they mean—the Commission's removal protections are still unconstitutional

because the Commission is not "traditional." I respectfully dissent from our court's refusal to reconsider these questions en banc.