# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 17, 2024

Lyle W. Cayce
Clerk

No. 22-40328

---

Consumers' Research; By Two, L.P.,

*Plaintiffs—Appellees,*

*versus*

Consumer Product Safety Commission,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:21-CV-256

---

Before Jones, Dennis, and Willett, *Circuit Judges.*

Don R. Willett, *Circuit Judge*:

The Supreme Court in recent years has taken a keen interest in administrative law—the law that governs the government—reexamining foundational notions of federal regulatory power.[1] In its current Term, for example, the Court is revisiting so-called *Chevron* deference, the 40-year-old

---

[1] *See, e.g.*, *West Virginia v. Envtl. Prot. Agency*, 142 S. Ct. 2587, 2599 (2022) (major-questions doctrine); *Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019) (non-delegation doctrine); *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018) (Appointments Clause).

No. 22-40328

doctrine under which courts defer to agency interpretations of ambiguous laws.[2]

Today's case may also attract the Court's interest. It tees up one of the fiercest (and oldest) fights in administrative law: the *Humphrey's Executor* "exception" to the general "rule" that lets a president remove subordinates at will.[3] In this 1935 New Deal-era precedent, which detractors say dilutes the president's constitutional power over the executive branch, the Supreme Court upheld restrictions on the president's authority to remove commissioners of so-called "independent" agencies—those headed by officers who may only be removed for specified causes.[4]

The *Humphrey's* exception traditionally "has applied only to multi-member bodies of experts."[5] Sitting en banc, we recently described the exception like this: Congress's decision "limiting the President to 'for cause' removal is not sufficient to trigger a separation-of-powers violation."[6] Instead, for-cause removal creates a separation-of-powers problem only if it "combine[s]" with "other independence-promoting mechanisms" that "work[] together" to "excessively insulate" an independent agency from presidential control.[7]

---

[2] *Loper Bright Enterprises, Inc. v. Raimondo*, 45 F.4th 359, 363 (D.C. Cir. 2022), *cert. granted*, 143 S. Ct. 2429 (2023).

[3] *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2206 (2020).

[4] *See Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935).

[5] *Collins v. Mnuchin*, 938 F.3d 553, 587 (5th Cir. 2019) (en banc) ("*Collins II*"), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 141 S. Ct. 1761 (2021)).

[6] *Collins v. Mnuchin*, 896 F.3d 640, 667 (5th Cir. 2018) ("*Collins I*"), *as reinstated by Collins II*, 938 F.3d at 588 (citation omitted).

[7] *Id.* at 666–67.

No. 22-40328

The plaintiffs in this case argue that the Supreme Court recently upended this framework in *Seila Law*.[8] In their view, that 2020 decision held that for-cause removal *always* creates a separation-of-powers violation—at least if the agency at issue exercises substantial executive power (which nearly all agencies do). This is so, the plaintiffs argue, even if for-cause removal is the *only* structural feature insulating an agency from total presidential control. We do not read *Seila Law* so broadly. On the contrary, and as in *Free Enterprise Fund*,[9] the Supreme Court in *Seila Law* left the *Humphrey's Executor* exception "in place."[10]

The Consumer Product Safety Commission is an independent agency whose members the President may remove only for cause. Although the Commission wields what we would today regard as substantial executive power, in every other respect it is structurally identical to the agency that the Supreme Court deemed constitutional in *Humphrey's*. Yet the district court concluded that the Commission's structure is unconstitutional under *Seila Law*. We disagree. The Supreme Court expressly "d[id] not revisit *Humphrey's Executor* or any other precedent" in *Seila Law*.[11]

As middle-management circuit judges, we must follow binding precedent, even if that precedent strikes us as out of step with prevailing Supreme Court sentiment. The logic of *Humphrey's* may have been overtaken, but the decision has not been overruled—at least not yet. Until that happens, *Humphrey's* controls. Accordingly, we REVERSE and REMAND.

---

[8] 140 S. Ct. 2183.

[9] *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010).

[10] *Seila Law*, 140 S. Ct. at 2198.

[11] *Id.* at 2206.

No. 22-40328

## I

Congress created the Consumer Product Safety Commission to "protect the public against unreasonable risks of injury associated with consumer products."[12] The Commission has five members, each of whom the President must appoint and the Senate must confirm.[13] The members serve staggered, seven-year terms. No more than three of them can "be affiliated with the same political party."[14] Structurally, these features make the Commission a mirror image of the Federal Trade Commission (FTC), an agency whose institutional design the Supreme Court considered in *Humphrey's Executor v. United States*.[15] The agencies are twins in another respect, too: The President may remove a member of the Commission only for "neglect of duty or malfeasance in office" — that is, only for *cause*.[16]

The Commission has the statutory authority to promulgate safety standards and to ban hazardous products.[17] It also has power to launch administrative proceedings, issue legal and equitable relief, and commence civil actions in federal court.[18] And like other agencies, the Commission must respond to requests for information (and requests for fee waivers) under the Freedom of Information Act (FOIA).[19] The Commission recently issued a

---

[12] 15 U.S.C. 2053(a).

[13] *Id.* § 2053(a).

[14] *Id.* § 2053(c).

[15] 295 U.S. 602, 619-20 (1935).

[16] 15 U.S.C. § 2053(a).

[17] 15 U.S.C. §§ 2056(a), 2057.

[18] 15 U.S.C. §§ 2064, 2076, 2069(a)–(b), 2071(a).

[19] 5 U.S.C. §§ 552(a)(4)(A), 552(e)(1)(L).

rule amending its FOIA regulations—increasing the per-page fee for paper copies by $0.05, and getting rid of duplication fees for electronic copies.[20]

By Two is a limited partnership that focuses on educational consulting. It has submitted more than 50 FOIA requests to the Commission, and it plans to submit more. It has also asked the Commission for fee waivers under FOIA, and it plans to ask for fee waivers again. In early 2021, Commission staffers denied several of By Two's requests for information relating to safety standards for bouncer seats, infant walkers, toddler carriers, and highchairs. Around the same time, staffers also denied By Two's requests for fee waivers for information related to drop-side cribs. By Two appealed those decisions within the Commission, but the appeals changed nothing.[21]

By Two sued the Commission and asserted three "claims." It styled the first count as "violation of the separation of powers," arguing that "the [C]ommission's structure violates Article II of the U.S. Constitution" because the Commission's members "are removable by the President only "for [cause]." By Two's second count, under the Administrative Procedure Act (APA), argued that the Commission's recent FOIA rule "must be set aside because it was promulgated by an unconstitutionally structured agency." Building on the first two counts, By Two argued in its third count (under FOIA itself) that "[t]he Commission is wrongfully withholding agency records to which [By Two is] entitled by relying upon and enforcing an invalid FOIA rule promulgated by an unconstitutionally structured

---

[20] *See* Fees for Production of Records, 86 Fed. Reg. 7499, 7500 (Jan. 29, 2021) (to be codified at 16 C.F.R. pt. 1015).

[21] Plaintiff–Appellant Consumers' Research submitted similar requests and received similar responses (albeit concerning different information). Because Consumers' Research and By Two are similarly situated, the rest of this opinion refers to the Plaintiffs–Appellants collectively as "By Two."

agency." The upshot is that By Two asserted the same legal theory three times: once each under the Constitution, the APA, and FOIA. By Two argues that this single theory and these three claims entitle it to, among other things, "[a] declaration that the Commission's structure violates Article II of the Constitution," "[a]n order setting aside the Commission's FOIA rule," and "[a]n order setting aside the Commission's denial of Plaintiffs' FOIA requests, including the denial of fee waivers."

A few weeks after it filed suit, By Two moved for "partial summary judgment granting declaratory relief [under Rule 56(a)]" and for "partial final judgment [under Rule 54(b)]"—but only as to Count 1. The Commission opposed the motion, and it moved to dismiss the complaint for lack of standing, for failure to state a claim, and because the Commission and the FTC have the same structure under *Humphrey's*.

The district court denied the Commission's motion and granted partial summary judgment for By Two.[22] It held: "(1) the removal restriction in 15 U.S.C. § 2053(b) violates Article II of the Constitution; (2) [By Two is] entitled to declaratory judgment to ensure that future FOIA requests are administered by a Commission accountable to the President; and (3) a partial final judgment as to Count 1 is proper under Rule 54(b)."[23] The district court's opinion reasoned that, unlike the FTC in 1935, "the Commission exercises substantial executive power and therefore does not fall within the *Humphrey's Executor* exception."[24] The court then certified the order as a final judgment under Rule 54(b). This appeal followed.

---

[22] *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 592 F. Supp. 3d 568, 591 (E.D. Tex. 2022).

[23] *Id.*

[24] *Id.* at 583–84.

No. 22-40328

## II

The standards of review are well settled. We review summary judgment de novo, "applying the same standards as the district court."[25] "A party is entitled to summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[26] Likewise, "[w]hether the district court completely disposed of a claim [under Rule 54(b)] is a question we review de novo."[27]

## III

First, jurisdiction.[28] The Commission argues that this crucial element is doubly lacking. We disagree. By Two's separation-of-powers claim is distinct from its APA and FOIA claims (under Rule 54(b)), and By Two has standing to assert its constitutional claim (under Article III).

## A

"When an action presents more than one *claim* for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, *claims* . . . ."[29] Rule 54(b)'s requirements are "jurisdictional" on appeal.[30]

The Commission argues that the district court's judgment under Rule 54(b) is invalid because By Two's complaint does not present separate claims for relief, but instead consists of a single claim phrased three different ways. But a legal claim is distinct from a legal theory. While a cognizable claim is

---

[25] *Texas v. United States*, 50 F.4th 498, 521 (5th Cir. 2022).

[26] *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 977 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56); *see id.* (addressing constitutionality); *Texas State LULAC v. Elfant*, 52 F.4th 248, 252 (5th Cir. 2022) (addressing standing).

[27] *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 755 F.3d 222, 228 (5th Cir. 2014).

[28] *See, e.g.*, *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021).

[29] Fed. R. Civ. P. 54(b) (emphases added).

[30] *Tetra Techs.*, 755 F.3d at 228.

No. 22-40328

what opens the courthouse door, a good theory is what lets the plaintiff emerge a victor. We have previously recognized that a "plaintiff with Article III standing can maintain a direct *claim* against government action that violates the separation of powers."[31] Whether or not By Two has "standing" (more on that next), its constitutional "claim" is a separate cause of action. The separation-of-powers claim is thus a sufficient basis for the declaratory relief that the district court entered.[32]

The standalone constitutional claim (Count 1) is distinct from the APA claim (Count 2) and the FOIA claim (Count 3), just as those statutory claims are themselves distinct. Even without an "articulable standard" for discerning one claim from another in more complicated cases—for example, those involving multiple theories of damages—we have no trouble concluding that the "claim" at issue is distinct enough for Rule 54(b).[33]

---

[31] *Collins II*, 938 F.3d at 587 (affirming viability of "shareholders' constitutional *claim*" (emphasis added)); *see id.* at 587 n.227 (holding that courts have "jurisdiction over declaratory judgment action[s] alleging violation[s] of separation of powers"); *see also Free Enter. Fund*, 561 U.S. at 491 n.2 (2010) (citing *Ex parte Young*, 209 U.S. 123, 149 (1908)); *LaRoque v. Holder*, 650 F.3d 777, 792 (D.C. Cir. 2011) ("*Free Enterprise* . . . recognized a nonstatutory cause of action for . . . declaratory and injunctive relief against the Public Company Accounting Oversight Board on the grounds that the statute creating the Board violated the Appointments Clause and impermissibly encroached on the President's authority to remove Executive Branch officials.").

[32] *Collins II*, 938 F.3d at 587.

[33] A similar scenario arose in *Texas v. United States*, 945 F.3d 355, 373 n.11 (5th Cir. 2019). There, the district court entered a final judgment on one claim under Rule 54(b) declaring the Affordable Care Act's individual mandate unconstitutional. *See Texas v. United States*, 352 F. Supp. 3d 665, 669–71 (N.D. Tex. 2018). But the district court's judgment did not reach a separate APA claim—even though that claim itself "presuppose[d]" that the individual mandate was unconstitutional. *Id.* at 671. Still, the district court held the claims were "related but distinct." *Id.* We agreed. *See Texas*, 945 F.3d at 373 n.11 (concluding that the "final judgment is only partial because it addresses only" Count 1 and because "[t]he district court has not yet ruled on the other counts").

No. 22-40328

## B

The Commission next argues that By Two lacks standing. Wrong again. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each *claim* that they press and for each *form of relief* that they seek."[34] As By Two's complaint and briefing show, there is only one claim at issue, and only one form of relief: "a declaratory judgment that the removal restriction for [the Commission's members] violates Article II of the Constitution." To have standing to assert this claim, By Two "must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the [Commission]; and (iii) that the injury would likely be redressed by judicial relief."[35] We take each element in turn.

## 1

"To establish injury in fact, a plaintiff must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[36] We have also held that "being compelled to participate in an invalid administrative process" can constitute an injury in fact.[37] At least two of our sister circuits have interpreted that holding to mean that "deprivation of a procedural right designed to protect a concrete interest is sufficient to establish standing."[38] We agree that this interpretation is analytically correct, because standing

---

[34] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (emphases added).

[35] *Id.* at 2203.

[36] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[37] *Texas v. United States*, 497 F.3d 491, 496–97 (5th Cir. 2007).

[38] *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1218 (10th Cir. 2017); *Delaware Dep't of Nat. Res. & Env't Control v. FERC*, 558 F.3d 575, 579 (D.C. Cir. 2009) (similar).

always requires a "concrete interest."[39] Applying that framework here, By Two has standing. It asserts the right to be free "from the threat of being subject to a regulatory scheme and governmental action lacking Article II oversight."[40] And even beyond that right, which belongs to all citizens, By Two has a concrete interest in the information and the fee waivers that it requested (and plans to request again) from the Commission.

The separation-of-powers violation *plus* By Two's concrete interest combine to satisfy the "injury" element of standing. By recognizing that this combination creates an injury, we tread no further than the Supreme Court's separation-of-powers cases have already ventured. For instance, in *Free Enterprise Fund*, the accounting firm had a concrete interest in the case because "[t]he Board inspected the firm, released a report critical of its auditing procedures, and began a formal investigation."[41] Likewise, in *Seila Law*, the plaintiff had a concrete interest because the agency had "issued a civil investigative demand" and had "directed [the plaintiff] to comply with the demand."[42] And in *Collins v. Yellen*, the plaintiffs had a "pocketbook injury" that was "a prototypical form of injury in fact."[43] All of these cases involved a plaintiff who alleged both a separation-of-powers violation *and* possessed a concrete interest in seeing the violation corrected. So too here.

To see why both a violation and a concrete interest are required in this context, it helps to consider why neither would be sufficient in isolation.

---

[39] *See id.*

[40] *Consumers' Rsch.*, 592 F. Supp. 3d at 579.

[41] 561 U.S. at 487.

[42] 140 S. Ct. 2183, 2194 (2020).

[43] 141 S. Ct. at 1779.

No. 22-40328

Without the concrete-interest requirement, Article III standing would transform from a threshold that bars some claims against the government to a welcome mat that plaintiffs barely acknowledge on their way into the federal courthouse. That is so for at least two reasons. First, discarding the concrete-interest requirement would be a quick lesson in how trivially easy it is to flavor ordinary statutory claims with a separation-of-powers mix-in. Second, every American is subject to a great many regulations. Perhaps too many. But merely being subject to those regulations, in the abstract, does not create an injury. If it were otherwise, then it is hard to see how standing to sue for separation-of-powers violations would be absent in any of the following hypotheticals (which we take as classic examples of a missing injury):

- The Federal Communications Commission (FCC) issues licenses to amateur radio operators. The agency thus regulates all citizens (by forbidding them from operating a ham radio without a license). Even if Bob has no interest in purchasing and operating a ham radio, does he have standing to sue?

- The National Science Foundation (NSF) gives research grants. Grantees are subject to the agency's supervision. If a researcher receives a grant and proposes to spend the money appropriately, does she have standing based on the injury that she sustains merely by being "subject to" agency oversight?

- The Small Business Association (SBA) issues loans. Sometimes it defers payment obligations. If a business owner had a loan that was deferred, would he have standing to sue based on the theory that the deferral decision issued from an agency that he believes lacks Article II oversight?

Without some separate concrete interest in the *outcome* of an allegedly unconstitutional process, the answer for abstract objections to perceived over-regulation must come from the political realm—not the judicial branch.

No. 22-40328

On the other hand, without the separate ingredient of a separation-of-powers violation, then a plaintiff asserting a structural-constitutional claim would often run aground on the "traceability" and "redressability" elements of standing. This case shows as much. By Two suffered an injury when the Commission withheld the information and denied the fee waivers. But it is not obvious that those informational and monetary injuries are traceable to the Commission's structure or that a declaration about the Commission's structure would redress them. That's why both ingredients are necessary: a separation-of-powers violation *plus* a concrete interest. Here, both are present. By Two has therefore alleged a legally cognizable injury.

2

So defined, By Two's injury is also traceable to the separation-of-powers violation that it alleges. "[A] litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority."[44] Rather, to determine traceability "[i]n the specific context of the President's removal power," the Supreme Court has "found it sufficient that the challenger 'sustains injury' from an executive act that allegedly exceeds the official's authority."[45] The Commission responds that traceability is absent because By Two *chose* to file the requests. But the Supreme Court has rejected that style of argument, holding instead that "an injury resulting from the application . . . of an unlawful enactment remains fairly traceable to such application, even if the injury could be

---

[44] *Seila Law*, 140 S. Ct. at 2196 (alteration adopted) (quoting *Free Enter. Fund*, 561 U.S. at 512 n.12).

[45] *Id.*

described in some sense as willingly incurred."[46] Because By Two has sustained an injury, traceability poses no obstacle.

3

Redressability follows. In a suit seeking to vindicate the President's removal power, when both injury and traceability are present, the plaintiff "[is] entitled to declaratory relief sufficient to ensure that the . . . requirements and . . . standards to which [it is] subject will be enforced only by a constitutional agency accountable to the Executive."[47] In other words, "when . . . a [removal] provision violates the separation of powers," the violation "inflicts a 'here-and-now' injury. . . that can be remedied by a court."[48] That is exactly what happened here: By Two asked for (and received) a judgment declaring that "the Commission's structure violates Article II of the Constitution." That declaration directly redresses the separation-of-powers injury that By Two alleges.[49]

Because By Two has alleged an injury-in-fact that is traceable to the Commission's unconstitutional structure and that is redressable by a favorable decision from this court, it has established its Article III standing to assert the separation-of-powers violation as an independent claim.

IV

On the merits, we cannot agree that the Commission's structure violates the prevailing iteration of the removal doctrine as the Supreme Court has articulated it.

---

[46] *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (collecting cases).

[47] *Free Enter. Fund*, 561 U.S. at 513.

[48] *Seila Law*, 140 S. Ct. at 2196 (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)).

[49] *See id.*

No. 22-40328

This is not to say that the doctrine is clear. And perhaps clarity will remain a mere aspiration so long as the doctrine's foundation includes a decision proclaiming that the FTC "exercises no part of the executive power."[50] Still, the Supreme Court, while it has limited *Humphrey's*, has not yet overruled it. Nor, of course, can we.[51] Instead, our role in the judicial architecture requires us only to map—not adjust—the borders of the so-called "*Humphrey's Executor* exception."[52] As best we can gather, the Supreme Court has not yet limited that decision to the FTC alone. Rather, so far as we can tell, the exception still protects any "traditional independent agency headed by a multimember board"—and thus still protects the Commission.[53]

Whatever else it may be, the Commission's structure is not a "historical anomaly," is not a recent "innovation," and is not lacking at least some "foothold in history or tradition."[54] For those reasons, too, we conclude that the Supreme Court's still-on-the-books precedent supports the Commission's structure. If it were otherwise, then the FCC, the NSF, the SBA, and dozens of other agencies would all be unconstitutionally structured. The Supreme Court has not yet directly embraced that conclusion. Even so, By Two's contrary arguments do not rely on any single premise that we can confidently label faulty. This impasse arises because the

[50] *Humphrey's Ex'r*, 295 U.S. at 628.

[51] *See Illumina, Inc. v. Federal Trade Comm'n*, 88 F.4th 1036, 1047 (5th Cir. 2023) ("[W]hether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer." (citing *Lefebure v. D'Aquila*, 15 F.4th 650, 660 (5th Cir. 2021)).

[52] *Seila Law*, 140 S. Ct. at 2198.

[53] *Id.* at 2193; *see id.* at 2192 (similar), 2211 (opinion of Roberts, C.J.) (suggesting that Congress could "remedy" a constitutionally "defect[ive]" single-member agency by "converting [it] into a multimember agency").

[54] *Id.* at 2202.

holding of *Humphrey's* is still "in place" even though its reasoning "has not withstood the test of time."[55] Resolving that dilemma is beyond our authority. The holding from *Humphrey's* controls, the holding authorizes the Commission's structure, and the holding requires us to reverse the district court's judgment.

## A

The *Humphrey's Executor* exception "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."[56] *Free Enterprise Fund* left that exception "in place," and *Seila Law* did the same—the Court there even noted that it did not "revisit *Humphrey's Executor* or any other precedent."[57] So, while the Court has more than once "declined to extend" *Humphrey's*, the exception itself has persevered, apparently in stasis.[58]

"[T]he contours of the *Humphrey's Executor* exception depend upon the *characteristics* of the agency before the Court."[59] In *Humphrey's*, the Court "identified several organizational features that helped explain its characterization of the FTC as *non-executive*,"[60]—

> Composed of five members—no more than three from the same political party—the Board was designed to be "non-partisan" and to "act with entire impartiality." The FTC's duties were "neither political nor executive," but instead

---

[55] *Id.* at 2198, 2198 n.2.

[56] *Id.* at 2199.

[57] *Id.* at 2198, 2206.

[58] *Id.* at 2198.

[59] *Id.* (emphasis added).

[60] *Id.* (emphasis added).

called for "the trained judgment of a body of experts" "informed by experience." And the Commissioners' staggered, seven-year terms enabled the agency to accumulate technical expertise and avoid a "complete change" in leadership "at any one time."[61]

The parties here agree that the Commission shares each of these characteristics, save one: By Two says that the Commission *does* exercise executive power and thus falls outside the *Humphrey's* exception. This argument requires us to consider the role of "executive power" in the Supreme Court's removal doctrine. But to do that is to board a train of thought that seems almost predestined for incoherence.

To start, *Humphrey's* distinguished an agency's "executive power in the constitutional sense" from its "discharge and effectuation of its quasi legislative or quasi judicial power." But our court has since recognized that *Seila Law* "cast[] doubt on the existence of wholly non-executive, quasi-legislative or quasi-judicial agency powers altogether."[62] If *Humphrey's* descriptions are no longer apt, what words replace them? Was everything the FTC did in 1935 part of its "executive power," or rather part of its "executive function," or does the correct description lie somewhere in between? The answers do not leap forward. Still, under any modern conception, the Commission unquestionably *does* exercise executive power.

Even so, it is hard to tell *how much* of that power is required before an agency loses protection under the *Humphrey's* exception. Does the agency lose protection if it exercises "*any* executive power"?[63] Or can the agency

---

[61] *Id.* at 2198–99.

[62] *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 465 n.19 (5th Cir. 2022) *cert. granted*, *SEC v. Jarkesy*, No. 22-859, 2023 WL 4278448 (U.S. June 30, 2023).

[63] *Seila Law*, 140 S. Ct. at 2199 (emphasis added).

claim the exception so long as it "do[es] not wield *substantial* executive power"?[64] Or should we instead be looking for "*significant* executive power"?[65] All three descriptions come from *Seila Law*.[66] Nor did the Court use "substantial" and "significant" merely as examples of an agency that exercises "any" executive power. Just the opposite: The Court described the *exception itself* as an exception "*for* multimember expert agencies that do not wield substantial executive power."[67] In any event, we agree with By Two that the Commission's power is substantial.

Having concluded that the Commission exercises substantial executive power (in the modern sense), we must next consider whether that characteristic—standing alone—removes the Commission from the *Humphrey's* exception. We conclude that it does not, for three reasons.

First, unlike the agencies at issue in *Seila Law* and *Free Enterprise Fund*, the Commission's structure does not require us to confront a historically unprecedented situation. "Perhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it."[68] In other words, historical pedigree matters. By Two does not argue that the Commission lacks historical precedent. Quite the opposite. "[A]lthough nearly identical language governs the removal of some two-dozen multimember independent agencies,"[69] By Two's counsel

---

[64] *Id.* at 2200 (emphasis added).

[65] *Id.* at 2201 (emphasis added).

[66] In a similar vein, our recent decision in *Jarkesy v. SEC* used *Seila Law's* "any executive power" quote, but we also referred to "substantial executive functions" and to "sufficiently important executive functions." 34 F.4th at 464 n.19.

[67] *Seila Law*, 140 S. Ct. at 2199–200 (emphasis added).

[68] *Id.* at 2201 (alterations adopted) (internal quotation marks omitted) (citing *Free Enterprise Fund*, 561 U.S. at 505).

[69] *Id.* at 2206.

could identify at oral argument only two that would survive its theory unscathed: "the U.S. Sentencing Commission, and the U.S. Commission on Civil Rights."[70] By Two emphasizes that this case is only about the Commission. But the Supreme Court has told us to decide the case by comparing *this* Commission to others. Doing that shows that the Commission has history on its side. It is a prototypical "traditional independent agency, run by a multimember board."[71] As such, we must count history in the Commission's favor, even though the Commission exercises substantial executive power.

Second, the Commission does not share the defining feature that the Supreme Court in *Seila Law* relied on to hold the CFPB unconstitutional. There, the Court said that "[t]he CFPB's *single-Director* structure contravenes [the Constitution's] carefully calibrated system by vesting significant governmental power in the hands of a *single individual* accountable to no one."[72] But here, of course, the Commission has a multimember board. It is true that the CFPB Director also exercised substantial executive power and that such power was a predicate for the Court's holding. But we understand the holding itself as applying only to agencies whose leadership rests solely with a single individual. Remember: *Seila Law* expressly "d[id] not revisit *Humphrey's Executor*."[73] Indeed, the Supreme Court noted that "the contours of the *Humphrey's Executor* exception depend upon the characteristics of the agency before the Court."[74] If the exception applied

---

[70] *See* https://www.ca5.uscourts.gov/OralArgRecordings/22/22-40328_3-6-2023.mp3 (at 22:25).

[71] *Seila Law*, 140 S. Ct. at 2192.

[72] *Id.* at 2203 (emphases added).

[73] *Id.* at 2206.

[74] *Id.* at 2198.

No. 22-40328

*only* to the FTC, this statement would make little sense. Thus, we view *Seila Law's* holding as reaching only "single-Director" agencies—not agencies that are identical to the FTC in every respect other than their name.[75]

Third, the Commission also does not have any of the features that combined to make the CFPB's structure "even more problematic" in *Seila Law*.[76] Unlike the CFPB, the Commissioners' staggered appointment schedule means that each President *does* "have an[] opportunity to shape [the Commission's] leadership and thereby influence its activities."[77] Further, the Commission *does not* "recei[ve] funds outside the appropriations process."[78] Thus, the President *can* "influence" the Commission's activities via the budgetary process.[79] Accordingly, we cannot conclude that the Commission "is an innovation with no foothold in history or tradition."[80]

In other words, the Commission fits squarely within what our en banc court described just a few years ago as "the recognized exception for independent agencies" whose leadership consists of a "multi-member bod[y] of experts."[81] *Seila Law* did not upend that exception, but rather "found 'compelling reasons not to extend [it] to the novel context of an independent agency led by a single Director.'"[82] Because the Commission's structure is not novel, *Seila Law* does not apply. That dooms By Two's argument. Our en banc court has already held that for-cause protection is

---

[75] *Id.* at 2202.

[76] *Id.* at 2204.

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at 2202.

[81] *Collins II*, 938 F.3d at 587–88.

[82] *Collins v. Yellen*, 141 S. Ct. at 1783 (quoting *Seila Law*, 140 S. Ct. at 2199).

No. 22-40328

"not sufficient to trigger a separation-of-powers violation."[83] Rather, for-cause removal violates the constitution only when it "combine[s]" with "other independence-promoting mechanisms" that "work[] together" to "excessively insulate" an agency from the President's control.[84] Yet By Two has not even attempted to identify any such additional "mechanisms," and its attacks on the Commission's structure therefore fail.[85]

## B

By Two argues that our analysis should have ended above, when we concluded that the Commission wields substantial executive power. Our view of *Seila Law* is not so thin. Rather, as we see it, By Two's argument—although free from any logical error—gives too much weight to the words "substantial executive power" but not enough weight to the separate factors that we just discussed. If that is a strange conclusion, the oddity follows, respectfully, from the Supreme Court's removal doctrine, not from our application of it.[86]

*Seila Law* "cast[] doubt" on the constitutionality of agencies like the Commission.[87] But the Supreme Court's "decisions remain binding

---

[83] *Collins I*, 896 F.3d at 667.

[84] *Id.* at 666–67.

[85] *Id.* at 667.

[86] As Judge Jones correctly observes, "The Supreme Court has created uncertainty that only it can ultimately alleviate." *Post*, at 1. A panel of this court also recently agreed that "although the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Excecutor* no longer binding is for the Supreme Court, not us, to answer." *Illumina*, 88 F.4th at 1047 (5th Cir. 2023). If precedent compels us to uphold the constitutionality of the FTC's removal restrictions today, even when that agency's "powers may have changed since" 1935, precedent also compels us to uphold the removal restrictions of a structurally identical agency.

[87] *Jarkesy*, 34 F.4th at 465 n.19.

precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."[88] Indeed, the Supreme Court has repeatedly warned that "lower court[s] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."[89] "This is true even if the lower court thinks the precedent is in tension with some other line of decisions."[90] Under these rules, *Humphrey's* still protects the Commission.

## V

We agree with the panel decision that recently distilled the relevant portion of *Seila Law* to a simple rule: "[P]rincipal officers may retain for-cause protection when they act as part of an expert board."[91] The distillate was dicta, and therefore non-binding, but it is also accurate. *Seila Law* referred a few times to "a traditional independent agency, run [or "headed"] by a multimember board."[92] These references were neither approving nor condemning.[93] In making them, the Court expressly "d[id] not revisit *Humphrey's Executor* or any other precedent."[94] Instead, the Court

---

[88] *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (quoting *Hohn v. United States*, 524 U.S. 236, 252–253 (1998)).

[89] *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (quoting *Rodriguez de Quijas v. Shearson/ Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

[90] *Id.*

[91] *Jarkesy*, 34 F.4th at 463.

[92] *Seila Law*, 140 S. Ct. at 2192, 93.

[93] Part IV of the *Seila Law* opinion does impliedly approve the Commission's structure, arguing that "Congress [could] pursu[e] alternative responses to the [separation-of-powers] problem—for example, converting the CFPB into a multimember agency." *Id.* at 2211. We cannot accept that CHIEF JUSTICE ROBERTS would direct Congress to pursue a plainly unconstitutional "response[]." But in this portion of the opinion, he was writing only for himself and two other Justices. *See id.* at 2187–90.

[94] *Seila Law*, 140 S. Ct. at 2199.

No. 22-40328

confirmed only that "the constitutionality of the CFPB Director's insulation from removal cannot be settled by *Humphrey's Executor* or *Morrison [v. Olson]* alone."[95] But here, *Humphrey's* does settle the question. Only the Supreme Court has power to reconsider that New Deal-era precedent—perhaps reaffirming it, overruling it, or narrowing it—and at least so far, it hasn't.

We REVERSE the district court's judgment and REMAND for further proceedings.

---

[95] *Id.* at 2201.

No. 22-40328

Edith H. Jones, *Circuit Judge*, concurring in part and dissenting in part:

I am pleased to concur in the sections of Judge Willett's opinion that uphold our appellate jurisdiction and plaintiffs' standing to sue. With some trepidation, in recognition of his careful exegesis of *Seila Law* as it applies to this case, I respectfully dissent. The Supreme Court has created uncertainty that only it can ultimately alleviate.

To be sure, the general rule is that, "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22 (1989). Naturally, though, one decision does not overrule another if "two precedents sit comfortably side by side." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137, 143 S. Ct. 2028, 2038 (2023).

The rule established in *Humphrey's Executor* is directly on point here. But contrary to what Judge Willett suggests, if this court holds that the CPSC violates the separation-of-powers, it will disturb neither the rule nor the holding of *Humphrey's Executor*.

Facts are called facts for a reason. The facts in *Humphrey's Executor* have never changed. In *Seila Law, the Court translated* those facts for modern eyes. The Court explained:

> Rightly or wrongly, the Court viewed the FTC (as it existed in 1935) as exercising "no part of the executive power." [*Humphrey's Executor*], at 628, 55 S. Ct. 869. Instead, it was "an administrative body" that performed "specified duties as a legislative or as a judicial aid." *Ibid.* It acted "as a legislative agency" in "making investigations and reports" to Congress and "as an agency of the judiciary" in making

recommendations to courts as a master in chancery. *Ibid.* "To the extent that [the FTC] exercise[d] any executive *function*[,] as distinguished from executive power in the constitutional sense," it did so only in the discharge of its "quasi-legislative or quasi-judicial powers." *Ibid.* (emphasis added).

*Seila Law LLC v. CFPB*, 591 U.S. ---, 140 S. Ct. 2183, 2198 (2020). With that translation, the *Humphrey's Executor* exception makes more sense. It "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise *any* executive power." *Id.* at 2199 (emphasis added).

In 1935, the FTC satisfied the Court's test for insulation from at-will removal because it did not exercise any executive power. No doubt the FTC has evolved significantly over time. Justice Thomas noted that "*Humphrey's Executor* does not even satisfy its own exception." *Id.* at 2218 (Thomas, J., concurring in part). That precise question is not before this court.

But unlike the 1935 FTC, the CPSC does exercise executive power. Different facts often mean different results. The CPSC is not limited to duties as a legislative or judicial aid such as "making investigations and reports" to Congress or "making recommendations to courts as a master in chancery." *Id.* at 2198. Rather, it promulgates regulations, adjudicates various matters, imposes heavy penalties for violations of its charging statutes, and commences civil actions in federal court seeking injunctive relief and monetary penalties. Plainly, these are all executive powers. *See Bowsher v. Synar*, 478 U.S. 714, 733, 106 S. Ct. 3181, 3191 (1986) (Regulating is an exercise of executive power); *City of Arlington*, 569 U.S. 290, 304 n.4, 133 S. Ct. 1863, 1873 n.4 (quoting Art. II, § 1, cl. 1) (Adjudications "take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive

Power.'"); *Seila Law*, 140 S. Ct. at 2200 (The power to seek "daunting monetary penalties . . . on behalf of the United States in federal court" is a "quintessentially executive power not considered in *Humphrey's Executor*.").

Judge Willett writes that holding the CPSC's structure violates the separation-of-powers would "adjust the borders" of the *Humphrey's Executor* exception. But applying law to a new set of facts does not adjust a legal rule's borders. Indeed, a decision holding the CPSC's structure unconstitutional would sit comfortably side-by-side with *Humphrey's Executor*. If anything, Judge Willett's writing *expands* the borders of *Humphrey's Executor* by extending the rule from agencies that *do not* exercise executive power to those that *do*.

Judge Willett's opinion makes two final points. First, "it is hard to tell how much of that [executive] power is required before an agency loses protection under the *Humphrey's* exception." He notes that sometimes the Supreme Court mentions "substantial", "significant", and "any" when describing "executive power" in *Humphrey's Executor*. But it is best to go to the primary source. *Humphrey's Executor* itself described the FTC as "exercis[ing] *no part of* the executive power vested by the Constitution in the President." *Humphrey's Executor*, 295 U.S. 602, 628, 55 S. Ct. 869, 874 (emphasis added). Either way, Judge Willett acknowledges that the CPSC exercises substantial power. Second, Judge Willett argues, essentially, that the CPSC's multimember structure alone permits for-cause removal. That cannot be the case if the *Humphrey's Executor* rule requires multi-member agencies also not exercise executive power.

To faithfully adhere to the rule set forth in *Humphrey's Executor,* I think that CPSC members' for-cause removal protection violates the constitutional separation-of-powers so long as they also exercise executive power. I respectfully dissent.